1   Bret A. Stone   Bar No. 190161  BStone@PaladinLaw.com
    Brian R. Paget  Bar No. 168694  BPaget@PaladinLaw.com
2   Paladin Law Group® LLP
    220 W. Gutierrez Street
3   Santa Barbara, CA  93101
    Telephone:  (805) 898-9700
4   Facsimile:  (805) 852-2495

5   Special Assistant City Attorneys
    for the City of West Sacramento
6
    Counsel for Plaintiffs City of West Sacramento,
7   California, and People of the State of California

8                  UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  CITY OF WEST SACRAMENTO,            Case No.
    CALIFORNIA; and PEOPLE OF THE
12  STATE OF CALIFORNIA,               COMPLAINT FOR:

13                       *Plaintiffs*,       1.  RCRA § 7002(a)(1)(B)
                                             2.  CERCLA § 107(a)
14             *v.*                          3.  Gatto Act, Cal. Health & Safety
                                                 Code §§ 25403.1, 25403.5
15  R AND L BUSINESS MANAGEMENT, a       4.  Porter-Cologne Water Quality Control
    California corporation, f/k/a STOCKTON     Act, Cal. Water Code § 13304(c)
16  PLATING, INC., d/b/a CAPITOL         5.  Public Nuisance
    PLATING, INC., a/k/a CAPITOL PLATING, 6.  Trespass
17  a/k/a CAPITAL PLATING; CAPITOL       7.  Negligence
    PLATING, INC., a dissolved California 8.  Ultrahazardous Activity
18  corporation; ESTATE OF GUS MADSACK,  9.  Statutory Indemnity
    DECEASED; ESTATE OF CHARLES A.       10. Declaratory Relief
19  SCHOTZ a/k/a SHOTTS, DECEASED;
    ESTATE OF E. BIRNEY LELAND,          Jury trial demanded
20  DECEASED; ESTATE OF FRANK E.
    ROSEN, DECEASED; ESTATE OF
21  UNDINE F. ROSEN, DECEASED; ESTATE
    OF NICK E. SMITH, DECEASED;
22  RICHARD LELAND, an individual;
    SHARON LELAND, an individual; ESTATE
23  OF LINDA SCHNEIDER, DECEASED;
    JUDY GUESS, an individual; JEFFREY A.
24  LYON, an individual; GRACE E. LYON, an
    individual; THE URBAN FARMBOX LLC,
25  a suspended California limited liability
    company; and DOES 1–50 inclusive,
26
                         *Defendants*.
27

28



COMPLAINT

Plaintiffs the City of West Sacramento, California ("City") and the People of the State of California ("People") (collectively, "Plaintiffs") bring this action, and allege upon knowledge as to their own acts, and upon information and belief as to the acts of all others, as follows:

## JURISDICTION

1.     This Court has original jurisdiction over the subject matter of the City's federal law causes of action pursuant to 28 U.S.C. § 1331, specifically, the first cause of action under the Resource Conservation and Recovery Act ("RCRA") § 7002(a), 42 U.S.C. § 6972(a), the second cause of action under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") § 107(a), 42 U.S.C. § 9607(a), and, in part, the tenth cause of action under the Declaratory Judgment Act, 28 U.S.C. § 2201, and CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2).

2.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the subject matter of Plaintiffs' other causes of action because those state law claims are so related to the federal claims in this action that they form the same case and controversy under Article III of the U.S. Constitution.

## NATURE OF THE ACTION

3.     Plaintiffs bring this action to address toxic levels of contamination in the environment, including the soil and groundwater, within the City of West Sacramento.

4.     The contamination originates from the real property located at 319 3rd Street, West Sacramento, California (the "Property") and has migrated and is migrating in the soil and groundwater to areas off-Property, creating an ever-growing plume of contamination (the "Site").

5.     Plaintiffs bring this action in their representative capacity in exercise of their "police power" to protect the public health, safety, welfare, and the environment.  The City also brings this action in its capacity as a government entity that has incurred and suffered and will incur and suffer recoverable costs and damages.

6.     Neither Plaintiff caused or contributed to, or is in any way liable for, the contamination or the costs or damages incurred or to be incurred as a result of the contamination.

7.     Defendants are the current and former owners of the Property, the former tenants of the Property, and some of the tenants' officers, directors, and/or owners whose operations of a



plating business at the Property resulted in the Property and the Site becoming contaminated.

8.     The City seeks to recover from defendants the costs it has incurred and will incur to address the contamination, and the damages it has suffered and will suffer because of the contamination; and both the City and the People seek to compel defendants to investigate and cleanup the contamination at, and obtain regulatory closure of, the Site, and to obtain a declaratory judgment in favor of Plaintiffs and against defendants as to these matters.

**PARTIES**

*Plaintiffs*

9.     The City of West Sacramento is a political subdivision of the State of California, specifically a municipality, and is an equitably innocent party having never owned the Property and having had no involvement with the operations at the Property that caused the contamination.

10.     The People of the State of California is the body politic of the State of California, the entity within which the state's sovereignty and political power reside. *See* Cal. Gov. Code § 100; Cal. Const., Preamble, Art. II, § 1.  As the state sovereign, it is an equitably innocent party, and is a plaintiff in this lawsuit only as to the fifth cause of action alleged herein, the claim for abatement of a public nuisance. *See* Cal. Civ. Proc. Code § 731.

*Defendants*

11.     Gus Madsack is a deceased individual and former owner and operator of Capitol Plating, a metal plating business that operated at the Property from approximately 1952 to the mid-1950s.

12.     Charles A. Schotz, a/k/a Charles A. Shotts, is a deceased individual and former owner and operator of Capitol Plating, a metal plating business that operated at the Property from the mid-1950s to 1961.

13.     Capitol Plating, Inc. is a dissolved California corporation and former owner and operator of Capitol Plating, a metal plating business that operated at the Property from 1960 to at least 1985.

14.     R and L Business Management is a California corporation and former owner and operator of Capitol Plating, a metal plating business that operated at the Property from 1961 to at

-3-

COMPLAINT

least 1985.  It was formerly known as, and is the successor-in-interest and successor-in-title to, Stockton Plating, Inc., which owned and operated Capitol Plating, Inc., and which did business as Capitol Plating, a metal plating business that operated at the Property from 1961 to at least 1985.

15.    Frank E. Rosen and Undine F. Rosen are deceased individuals and former owners, operators, officers, directors, and/or shareholders of Capitol Plating, a metal plating business that operated at the Property from 1961 to at least 1985.

16.    E. Birney Leland is a deceased individual and former owner, operator, officer, director, and/or shareholder of Capitol Plating, a metal plating business that operated at the Property from 1961 to at least 1985.

17.    Nick E. Smith is a deceased individual and former owner, operator, officer, director, and/or shareholder of Capitol Plating, a metal plating business that operated at the Property from 1961 to at least 1985.

18.    Richard Leland and Sharon Leland are individuals, former owners, operators, officers, directors, and/or shareholders of Capitol Plating, a metal plating business that operated at the Property from 1961 to at least 1985, and current owners, officers, directors, and/or shareholders of R and L Business Management.

19.    Linda Schneider is a deceased individual and former owner and lessor of the Property.

20.    Judy Guess, formerly known as Judy Schneider, is an individual and former owner and lessor of the Property.

21.    Jeffrey A. Lyon and Grace E. Lyon are individuals and former owners of the Property.

22.    The Urban Farmbox LLC is a suspended California limited liability company and the current owner of the Property with its principal place of business in West Sacramento, California.

23.    The estates of Linda Schneider, Gus Madsack, Charles A. Schotz a/k/a Shotts, Frank E. Rosen, Undine F. Rosen, E. Birney Leland, and Nick E. Smith, deceased, are protected by insurance for the liability alleged against them herein, and are named as defendants herein, and claims are asserted against their estates herein, to establish the decedents' liability for which the

-4-

1   decedents were protected by insurance pursuant to California Probate Code §§ 550–555.

2   24.   The true names and capacities, whether individual, corporate, associate, or otherwise,

3   of Does 1 through 50 are unknown to Plaintiffs at this time, and Plaintiffs' claims are asserted

4   against them using fictitious names.  When the true names and capacities of said Doe defendants

5   have been ascertained, Plaintiffs will amend this Complaint accordingly pursuant to Federal Rules

6   of Civil Procedure 15(a)(2) and 21.

7   **VENUE**

8   25.   Venue is proper in this Court pursuant to CERCLA § 113(b), 42 U.S.C. § 9613(b),

9   because the releases and damage at issue in this action occurred in this judicial district.  Venue is

10   also proper in this Court pursuant to RCRA § 7002(a), 42 U.S.C. § 6972(a), and 28 U.S.C.

11   § 1391(b), because the actual and threatened endangerment, injury, and damage at issue are

12   taking place and have taken place in this judicial district.

13   **NOTICE**

14   26.   The City provided notice of the actual and threatened endangerment, injury, and

15   damage alleged herein by mailing notices of endangerment and of intent to file suit pursuant to

16   RCRA § 7002(b)(2)(A), 42 U.S.C. § 6972(b)(2)(A), to the U.S. Environmental Protection Agency

17   ("US-EPA"), the California EPA ("Cal-EPA"), the California Department of Toxic Substances

18   Control ("DTSC"), and defendants.

19   27.   Plaintiffs waited at least 90 days after receipt of the notices of endangerment and of

20   intent to file suit by each of the recipients before filing this action.

21   28.   The City also provided notice to respond and propose an investigation plan pursuant

22   to California Health & Safety Code § 25403.1(b) to US-EPA, Cal-EPA, DTSC, and Defendants.

23   29.   Plaintiffs waited at least 60 days after receipt of the notice to respond and propose an

24   investigation plan by each of the recipients before filing this action.

25   30.   Plaintiffs have satisfied all jurisdictional prerequisites to filing this action.

26   **GENERAL ALLEGATIONS**

27   *The Site*

28   31.   The Site is comprised of the Property and the area around and in the vicinity of the



-5-

Property that has been, or is threatened with being, impacted by the environmental contamination at issue in this litigation.

### *Operational History at the Property*

32.     Beginning in the 1950s, perhaps earlier, a metal plating business operated on the Property continuously until September 1985, when a fire destroyed a portion of the building. During that entire time, all of the various owners and operators of the metal plating business at the Property did business as "Capitol Plating" or something substantially similar such as "Capitol Plating, Inc." or "Capital Plating."

33.     After the fire in September 1985, Capitol Plating continued to occupy the Property, eventually removing its plating equipment and later vacating the Property in 1991.  Since then, the Property has remained vacant.

34.     Each operator defendant (*i.e.,* all defendants except the prior or current Property owner defendants) had a substantial role in the ownership and control of Capitol Plating, the metal plating business that operated on the Property, and in the management and operations of that business during each defendant's relevant time period at the Property, including, for instance, as officers, directors, managers, and/or shareholders of such business.

35.     Each individual operator defendant (*i.e.,* all defendants except the corporate defendants and the prior or current Property owner defendants) was the alter ego of the corporate entity that operated during their relevant time period at the Property because, *inter alia,* of their controlling interests in the corporation, their complete dominance and control over the corporation such that no separateness or individuality between them and the corporation existed, and their failure to follow and adhere to the formalities required for the corporation's existence. Therefore, failure to "pierce the corporate veil" and hold these individual defendants liable in lieu of or in addition to the corporation would result in injustice and prejudice to Plaintiffs.

36.     Each operator defendant (*i.e.,* all defendants except the prior or current Property owner defendants) exercised substantial influence and control over the operations of Capitol Plating, the metal plating facility, during each defendant's relevant time period at the Property, including over plating equipment and the use, handling, storage, disposal, transportation, and

releases of the metal plating solutions.

### The Contamination

37.   On May 2, 1986, the Yolo County Department of Health Services inspected the Property and issued a Notice of Violation and Schedule for Compliance relating to elevated levels of heavy metals—specifically, nickel, copper and zinc—in the environment at the Site.

38.   Since then, the subsurface at the Site has been tested several times.  These tests have confirmed the presence of elevated levels of numerous chemicals in the soil and groundwater at the Site, including various heavy metals, such as nickel, copper, zinc, chromium, as well as volatile organic compounds, such as 1,2-DCA, (collectively, "Contaminants").

39.   The source of the Contaminants in the environment at the Site is Capitol Plating, the metal plating business that operated on the Property continuously for over 35 years.

40.   Numerous intentional, negligent, and/or sudden and accidental spills, leaks, discharges, disposals, and other releases of the Contaminants occurred at the Property as a result of, and because of, the operations of Capitol Plating, the metal plating business that operated at the Property, and during the subsequent removal of the plating equipment and chemical solutions from the Property.

41.   These Contaminants are "hazardous substances" as that term is defined in federal law, 42 U.S.C. § 9601(14), and state law, Health & Safety Code § 25281(g), and are "hazardous wastes" and "solid wastes" as those terms are defined in federal law, 42 U.S.C. § 6903(5), (27), respectively.

42.   All groundwater within the state of California, including all groundwater at the Site that has been or is threatened with being adversely impacted by contamination at or emanating from the Property, is "waters of the state" pursuant to Water Code § 13050(e).

43.   Each defendant caused or contributed to the past or present handling, storage, treatment, transportation, generation, release, and/or disposal of the Contaminants in the environment at the Site, including in the soil, soil vapor, ambient air, indoor air, groundwater, surface water, and waters of the state of California, because each defendant released or otherwise discarded such Contaminants, or controlled and/or operated the Property and/or Capitol Plating,



the business from which such Contaminants were released or otherwise discarded, and failed to prevent or abate the resulting contamination.

44.   Once released into the environment, these Contaminants have migrated and continue to migrate within the environment at the Site, causing additional harm to the environment, and continuing to threaten public health and the environment.

45.   The Site needs to be further investigated and characterized so that a remedial action plan can then be developed and implemented at the Site, and regulatory closure obtained.

46.   The defendants have known for over three decades about the contamination, the serious threat that it poses to public health and the environment, that it needs to be investigated and cleaned up, and that, as the polluters who caused or contributed to it or allowed it to happen and failed to address it, they are responsible for such investigation and cleanup.

47.   Despite such knowledge, the defendants have failed and refused to perform or fund such investigation and cleanup.

48.   Under the "continuous accrual" theory, when an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.  Here, the defendants' liability for the contamination at the Site arises on a recurring basis as the contamination continues to spread and cause additional harm and damage.

49.   As a result of the defendants' releases of Contaminants into the environment at the Property, the City has incurred substantial costs and will continue to incur costs in order to address and respond to the contamination at the Site, and has suffered and will continue to suffer substantial damages as a direct and proximate result of such contamination.

**FIRST CAUSE OF ACTION**

**RCRA § 7002(a)(1)(B)**

**(By the City Against All Defendants)**

50.   Plaintiffs reallege and incorporate by reference all allegations set forth above as though set forth in full herein.

51.   RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), under which the City brings this cause of action, is RCRA's citizen suit provision.



52.     Under RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), when a "solid waste" or a "hazardous waste" "may present an imminent and substantial endangerment to health or the environment" and the defendant falls within one of the categories of persons declared liable to abate such endangerment, then the plaintiff may obtain injunctive relief against such defendant, may recover its attorneys' fees from such defendant, and may obtain such other and further relief against such defendant as the court deems just and proper.

53.     The persons declared liable to abate such endangerments are persons who contributed to "past or present handling, storage, treatment, transportation, or disposal" of the "solid wastes" and "hazardous wastes" at issue.  Those persons include "any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility."

54.     The City and each defendant is a "person" within the meaning of RCRA § 1004(15), 42 U.S.C. § 6903(15).

55.     The Contaminants in the environment at the Site are "solid wastes" within the meaning of RCRA § 1004(27), 42 U.S.C. § 6903(27), because they are discarded materials resulting from industrial or commercial operations.

56.     The Contaminants in the environment at the Site are "hazardous wastes" within the meaning of RCRA § 1004(5), 42 U.S.C. § 6903(5), because their concentrations and physical and chemical characteristics pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of, or otherwise managed.

57.     The Contaminants in the environment at the Site present or may present an "imminent and substantial endangerment to human health or the environment" within the meaning of RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).

58.     The City provided notice of the endangerment to the US-EPA, Cal-EPA, DTSC, and defendants, and waited at least 90 days after receipt of such notice by such recipients before filing this action, as required by RCRA § 7002(b)(2)(A), 42 U.S.C. § 6972(b)(2)(A).

59.     Neither the US-EPA nor the Cal-EPA has commenced or is diligently prosecuting an action under RCRA or CERCLA related to the Site.



60.   The City has served a copy of this Complaint on the Attorney General of the United States and on the Administrator of the US-EPA as required by RCRA § 7002(b)(2)(F), 42 U.S.C. § 6972(b)(2)(F).

61.   Each defendant is liable under RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), to the City because each defendant caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of the Contaminants in the environment at the Site, including the waters of the State of California, and because each defendant either released or otherwise discarded, or caused or contributed to the release or discarding of, the Contaminants in the environment at the Site, or owned and controlled the Property when, and at which, those Contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

62.   The City is entitled to injunctive relief under RCRA § 7002(a), 42 U.S.C. § 6972(a), compelling each defendant jointly and severally to conduct a complete, timely, and appropriate investigation and abatement of all actual and potential endangerments arising from the presence of the Contaminants in the environment at the Site, and to obtain regulatory closure of the Site.

63.   Defendants' liability for abatement, for the City's attorneys' fees, and for such other and further relief as the Court may deem just and proper under RCRA is strict, joint and several.

## SECOND CAUSE OF ACTION

### CERCLA § 107(a)

### (By the City Against All Defendants)

64.   Plaintiffs reallege and incorporate by reference all allegations set forth above as though set forth in full herein.

65.   CERCLA § 107(a), 42 U.S.C. § 9607(a), under which the City brings this cause of action, is CERCLA's response cost recovery provision.

66.   To recover response costs under CERCLA § 107(a), 42 U.S.C. § 9607(a), a plaintiff must show: (1) that the site on which the hazardous substances are contained is a "facility"; (2) that a "release" or "threatened release" of any "hazardous substance" from the facility has occurred; (3) that such "release" or "threatened release" has caused the plaintiff to incur response



1   costs that were "necessary" and "consistent with the national contingency plan"; and (4) that the

2   defendant is within one of four classes of persons subject to the liability provisions of § 107(a).

3        67.   Among the persons subject to such liability are the current owner or operator of the

4   facility, and the prior owner or operator of the facility who was such at the time of a disposal of a

5   hazardous substance at such facility.

6        68.   The Property, the Site, and the metal plating business that operated on the Property

7   known as Capitol Plating is each a "facility" within the meaning of CERCLA § 101(9), 42 U.S.C.

8   § 9601(9).

9        69.   The Contaminants in the environment at the Site are "hazardous substances" within

10  the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14).

11       70.   A "release" or threatened "release" of such hazardous substances at and/or from each

12  such facility has occurred within the meaning of CERCLA § 101(22), 42 U.S.C. § 9601(22).

13       71.   Defendants Judy Guess, Linda Schneider, Jeffrey Lyon, and Grace Lyon are liable

14  under CERCLA § 107(a), 42 U.S.C. § 9607(a), because they each owned the Property during the

15  time that the Contaminants were disposed of at the Property.

16       72.   Defendant The Urban Farmbox LLC is liable under CERCLA § 107(a), 42 U.S.C.

17  § 9607(a), because it is the current owner of the Property.

18       73.   The remaining defendants are liable under CERCLA § 107(a), 42 U.S.C. § 9607(a),

19  because they each used, handled, stored, treated, transported, and/or disposed of, or arranged for

20  others to do so, or exercised substantial influence and control over the use, handling, storage,

21  transport, and/or disposal of the Contaminants at the Property, and because they each owned

22  and/or operated the metal plating business at the Property known as Capitol Plating at a time

23  when the Contaminants were disposed of at the Property.

24       74.   The releases and threatened releases and disposals as described above have caused the

25  City to incur necessary costs of response consistent with the national contingency plan.

26       75.   Each defendant is liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), to the City

27  for such necessary costs of response.

28       76.   Defendants' liability to the City under CERCLA is strict, joint and several.

**THIRD CAUSE OF ACTION**

**The Gatto Act, Cal. Health & Safety Code §§ 25403.1 and 25403.5**

**(By the City Against All Defendants)**

77.    Plaintiffs reallege and incorporate by reference all allegations set forth above as though set forth in full herein.

78.    The Gatto Act, California Health & Safety Code §§ 25403–25403.8, is the policy successor to the now-repealed Polanco Redevelopment Act and, pursuant to Health & Safety Code § 25403.8, must be interpreted and implemented consistent with that act.

79.    The Gatto Act, Health & Safety Code §§ 25403.1 and 25403.5, empowers "local agencies" to compel "responsible parties," through a civil action for injunctive relief and cost recovery, to investigate and clean up "releases" of "hazardous materials" on, under, or from "blighted property" that the local agency has found to be within a "blighted area" due to the presence of "hazardous materials" following a "Phase I" or "Phase II" environmental assessment, whether the local agency owns the property or not.  The responsible parties in such an action are liable to the local agency for any investigation and clean up related costs it incurs and for the litigation costs it incurs in the action, including reasonable attorneys' fees.

80.    The City is a "local agency" and a "person" within the meaning of Health & Safety Code § 25403(*l*), (m), respectively.

81.    The Property is a "blighted property" and has been found by the City Council of the City of West Sacramento to be a "blighted property" within the meaning of Health & Safety Code § 25403(b).

82.    The Property is within a "blighted area" and has been found by the City Council of the City of West Sacramento to be within a "blighted area" within the meaning of Health & Safety Code § 25403(a).

83.    The Property and the Site are both within the City's geographic boundaries.

84.    Both "Phase I" and "Phase II" environmental assessments have been conducted at the Property within the meaning of Health & Safety Code § 25403(n), (o).

85.    The Contaminants are "hazardous materials" within the meaning of Health & Safety

1   Code § 25403(i) and are present within the environment at the Property.

2       86.    There have been "releases" of Contaminants at the Property within the meaning of

3   Health & Safety Code § 25403(r), which releases occurred, as described above, in connection

4   with the operation of Capitol Plating, the metal plating business that operated on the Property

5   from the 1950s to at least 1985.

6       87.    The Gatto Act, Health & Safety Code § 25403(s), defines "responsible party" to mean

7   a person described in Health & Safety Code § 25323.5(a) or Water Code § 13304(a).

8       88.    Each defendant is a "person" within the meaning of Health & Safety Code

9   § 25403(m).

10      89.    Each defendant is a "responsible party" within the meaning of Health & Safety Code

11  § 25403(s).

12      90.    The City provided notice to US-EPA, Cal-EPA, DTSC, and the defendants to respond

13  and propose an investigation plan, waited at least 60 days after the recipients' receipt of such

14  notice, and, upon receiving no response from any of the recipients, filed this action, consistent

15  with Health & Safety Code § 25403.1(b).

16      91.    The City is entitled under the Gatto Act to injunctive relief compelling defendants

17  jointly and severally, promptly and competently to take such action as may be necessary to

18  investigate and clean up the contamination at the Site and to obtain regulatory closure of the Site.

19  The City is also entitled under the Gatto Act to be reimbursed by defendants for the costs it has

20  incurred and will incur because of such contamination, including its reasonable attorneys' fees

21  and other costs of this litigation.

22      92.    Defendants' liability to the City under the Gatto Act is strict, joint and several.

23                          **FOURTH CAUSE OF ACTION**

24      **The Porter-Cologne Water Quality Control Act, Cal. Water Code § 13304(c)**

25                      **(By the City Against All Defendants)**

26      93.    Plaintiffs reallege and incorporate by reference all allegations set forth above as

27  though set forth in full herein.

28      94.    California Water Code § 13304(c), under which the City brings this cause of action, is

1    the Porter-Cologne Water Quality Control Act's governmental cost recovery provision.

2        95.    To recover costs under Water Code § 13304(c), a plaintiff must show: (1) that it is a

3    governmental agency; (2) that the defendant is a "person" who caused or permitted "waste" to be

4    discharged or deposited where it has reached or threatens to reach the "waters of the state" and it

5    has created or threatens to create a condition of "pollution" or "nuisance"; and (3) that the

6    plaintiff has undertaken necessary remedial action in response to such conduct by the defendant.

7    The plaintiff can then recover from the defendant the reasonable costs it incurs and has incurred

8    in cleaning up the waste, abating the effects of the waste, supervising cleanup or abatement

9    activities, or taking other remedial action.

10       96.    The City is a governmental agency.

11       97.    The City and each defendant is a "person" within the meaning of Water Code

12   § 13050(c).

13       98.    The Contaminants are "wastes" within the meaning of Water Code § 13050(d).

14       99.    Each defendant has caused or permitted Contaminants to be discharged or deposited

15   at locations within the Site where they have reached or threaten to reach the "waters of the state"

16   within the meaning of Water Code § 13050(e).

17       100.   Each defendant has caused or permitted Contaminants to be discharged or deposited

18   at locations within the Site where they have created or threaten to create a condition of

19   "pollution" or "nuisance" within the meaning of Water Code § 13050(*l*), (m).

20       101.   The City has undertaken necessary remedial action in response to such conduct by the

21   defendants.

22       102.   Each defendant is liable under Water Code § 13304(c) to the City for the reasonable

23   costs it has incurred and will incur in cleaning up the waste, abating the effects of the waste,

24   supervising cleanup or abatement activities, or taking other remedial action such necessary costs

25   of response.

26       103.   Defendants' liability to the City under Water Code § 13304(c) is strict, joint and

27   several.

28   ///

# FIFTH CAUSE OF ACTION

## Public Nuisance

### (By All Plaintiffs Against All Defendants)

104.   Plaintiffs reallege and incorporate by reference all allegations set forth above as though set forth in full herein.

105.   California Civil Code § 3479 defines a "nuisance," in relevant part, as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of the property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal or basin."

106.   California Civil Code § 3480 defines a "public nuisance" as: "[o]ne which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

107.   Defendants exercised influence and substantial control over the operations of the metal plating business at the Property and through such influence and control caused or contributed to releases, discharges, leaks, spills, disposals, and the discarding of Contaminants into the environment at the Property, and allowed such contamination to migrate off Property in the environment throughout the Site, and failed to prevent or abate such contamination and migration.

108.   Defendants' conduct in causing and contributing to the contamination at the Site created a condition at the Site that is injurious to health, indecent, offensive to the senses, and an obstruction to the free use of the various properties within the Site, so as to interfere with the comfortable enjoyment of life and property, and that unlawfully obstructs the free use, in the customary manner, of the surface water and groundwater at the Site.

109.   The public nuisance condition and related endangerments to health and the environment at the Site affects the entire surrounding community because it interferes with the free use and enjoyment of publicly-owned property and natural resources, including surface water and groundwater.

110.   Defendants have caused, created, maintained, contributed to, and neglected to abate a "public nuisance," as defined in Civil Code §§ 3479 and 3480, namely, the actual and potential endangerments to health and the environment created by the contamination at the Site.

111.   The public nuisance condition and related endangerments to health and the environment at the Site violate Water Code §§ 13050(m), 13350, and 13387, Health & Safety Code § 25249.5 and 117555, Fish & Game Code § 5650, and West Sacramento Municipal Code §§ 19.00.001–19.20.023.

112.   The purpose of these laws is to set a standard of care or conduct to protect the public and the environment from the harm that may result from the type of improper conduct engaged in by defendants.

113.   Plaintiffs are among the class of persons these laws were intended to protect.

114.   The public nuisance condition and related endangerments to health and the environment at the Site thus constitute a public nuisance *per se.*

115.   Defendants' conduct in causing and contributing to the contamination at the Site and in failing to prevent or abate such contamination and the migration thereof violated federal, state, local, and common law.

116.   Defendants' conduct in causing and contributing to the contamination at the Site and in failing to prevent or abate such contamination and the migration thereof was undertaken without the consent or knowledge of Plaintiffs.

117.   Defendants knew or should have known that their conduct in causing and contributing to the contamination at the Site and in failing to prevent or abate such contamination and the migration thereof would result in the nuisance complained of.

118.   The City has suffered injury and damages as a direct and proximate result of the contamination at the Site because it has been required to incur necessary response costs to address the contamination that it did not cause or contribute to and for which it has no liability, and because the contamination at the Site has prevented the City from redeveloping the Site for the public benefit.

119.   The public nuisance at the Site is a continuing nuisance that can be abated at a

reasonable cost by reasonable means, and Plaintiffs have demanded that the defendants abate the nuisance and hereby reiterate that demand.

120.   Defendants are strictly, jointly and severally liable for abatement of the public nuisance at the Site and for the harm suffered and costs incurred because of such nuisance.

121.   Plaintiffs are entitled to injunctive relief compelling defendants jointly and severally, promptly and competently to take such action as may be necessary to abate the public nuisance at the Site and to obtain regulatory closure of the Site.  The City is also entitled to be reimbursed by defendants for the harm it has suffered and will suffer and the costs it has incurred and will incur because of such nuisance.

## SIXTH CAUSE OF ACTION

### Trespass

### (By the City Against All Defendants)

122.   Plaintiffs reallege and incorporate by reference all allegations set forth above as though set forth in full herein.

123.   Trespass under California law is the intentional, knowing, reckless, or negligent entry onto another's property without permission.

124.   The City owns and controls real property within the Site.

125.   Through their ownership and management of the Property or their operations of the metal plating business at the Property, the defendants intentionally, knowingly, recklessly, or negligently caused Contaminants to enter upon and remain on the City's property within the Site.

126.   The City did not give the defendants permission to engage in the conduct that caused or contributed to the Contaminants entering upon and remaining on the City's property.

127.   Defendants knew or should have known their conduct in causing the Contaminants to enter and remain on the City's property would result in the trespass complained of.

128.   The trespass at the Property is a continuing trespass that can be abated at a reasonable cost by reasonable means, and the City has demanded that the defendants abate the trespass and hereby reiterates that demand.

129.   Defendants have failed and refused to remove the Contaminants from the City's



property, and unless they are ordered immediately to do so, it will be necessary for the City to commence numerous successive actions against them to secure compensation for the damages sustained, thus requiring a multiplicity of suits.

130.  Defendants' conduct in causing the Contaminants to enter and remain on the City's property, and thereby creating the trespass complained of, was a substantial factor in causing harm to the City, including lost tax revenues, lost profits, a costly delay in its redevelopment of the Site, and the incurrence of response costs and other damages.

131.  The City has no adequate remedy at law to redress the injuries that it has suffered and that it will suffer because of the trespass at its Property, and injunctive relief compelling the defendants to promptly remove the Contaminants from the City's property is thus appropriate.

132.  Defendants are jointly and severally liable for abatement of the trespass, for the damages caused to the City by the trespass, and for the costs incurred by and to be incurred by the City to respond to the trespass.

133.  The City is entitled to injunctive relief compelling the defendants jointly and severally, promptly and competently to take such action as may be necessary to abate the trespass, to reimburse the City for the costs it has incurred and will incur to respond to the trespass, and to compensate the City for the damages it has suffered and will suffer as a result of the trespass.

**SEVENTH CAUSE OF ACTION**

**Negligence**

**(By the City Against All Defendants)**

134.  Plaintiffs reallege and incorporate by reference all allegations set forth above as though set forth in full herein.

135.  At various times noted above, each defendant owned or possessed and controlled the Property and had a duty to use reasonable care appropriate to the circumstances to prevent harm or the unreasonable risk of harm to the City, to the public at large, and to the environment.

136.  At various times noted above, each defendant owned, or possessed and controlled the Property and had a duty to use reasonable care appropriate to the circumstances to maintain the Property in good repair and in a condition free from pollution and contamination.

137.  At various times noted above, each defendant owned or possessed and controlled the Property and had a duty to use reasonable care in their management and control of the Property, in their management, operation, and control of the metal plating business, and in their use, handling, storage, transfer, transport, and disposing of Contaminants so as to avoid causing or allowing the Property to become and remain contaminated with such Contaminants.

138. From the date that each defendant first knew or should have known of the contamination at and emanating from the Property, they have had an ongoing duty to investigate and remediate such contamination.

139. The Contaminants are inherently dangerous products in and of themselves, and operating a metal plating business and handling, using, storing, transferring, transporting, and disposing of the Contaminants are inherently dangerous activities in and of themselves in that the hazard persists despite the exercise of ordinary care; the risk of harm is so great that the failure to use extreme caution is negligence.

140.  Defendants owed these duties to the City, the public, and the environment.

141. Defendants breached these duties by engaging in conduct which fell below the standard of care established by law for the protection of others against unreasonable risk of harm, and by failing to exercise due care commensurate with the risk posed by their conduct taking into consideration all relevant circumstances.

142.  Defendants breached these duties by failing to exercise due care in their management, operation, and control of the metal plating business at the Property so as to avoid causing or contributing to the contamination at the Site.

143.  Defendants breached these duties by failing to exercise due care in their use, handling, storage, transfer, transport, disposal, and releases of the Contaminants at the Property so as to avoid causing or contributing to the contamination at the Site.

144.  Defendants breached these duties by failing to exercise due care in their practices, procedures, maintenance, and use of the equipment at the Property so as to avoid causing or contributing to the contamination at the Site.

145.  Defendants breached and continue to breach these duties by failing and continuing to



1   fail to exercise due care in their response to leaks, spills, discharges, and other releases of

2   Contaminants at the Property, including in their continuing failure to promptly and fully contain

3   and cleanup such releases and prevent such releases from reaching the groundwater and

4   continuing to spread in the environment.

5      146.   Defendants breached and continue to breach these duties by failing and continuing to

6   fail to investigate and remediate the contamination at the Site and obtain regulatory closure of the

7   Site.

8      147.   These breaches were and are negligent, reckless, and careless.

9      148.   Defendants' negligence as described above directly and proximately caused and was

10  a substantial factor in causing the City to suffer harm, including damage to its property, lost tax

11  revenues, lost profits, a costly delay in its redevelopment of the Site, and the incurrence of

12  response costs and other damages.

13     149.   The Site ordinarily would not have become contaminated and the City ordinarily

14  would not have suffered the resulting harm absent some form of negligence.

15     150.   The contamination at the Site and the resulting harm to the City were caused by

16  things within the control of the defendants, namely, the metal plating business, the Property, the

17  vehicles and equipment thereon, and the Contaminants.

18     151.   The City did not cause or contribute to the contamination at and emanating from the

19  Property or to any conduct or events that led to such contamination.

20     152.   Therefore, under the doctrine of *res ipsa loquitor,* it is presumed that the defendants

21  were negligent and that their negligence was a substantial factor in causing the contamination and

22  the City's harm as alleged herein.

23     153.   Defendants' conduct as described herein violated and the resulting contamination of

24  the Site violates Water Code §§ 13050(m), 13350, and 13387, Health & Safety Code §§ 25249.5

25  and 117555, Fish & Game Code § 5650, and West Sacramento Municipal Code §§ 19.00.001–

26  19.20.023.

27     154.   The purpose of these laws is to set a standard of care or conduct to protect the public

28  and the environment from the harm that may result from the type of improper conduct engaged in

1    by the defendants.

2        155. The City is among the class of people and entities these laws were intended to protect.

3        156. Defendants' conduct as described herein is thus negligence *per se*.

4        157. Defendants' conduct as described herein was without the City's consent.

5        158. Defendants are jointly and severally liable for the harm they caused to the City, the

6    public, and the environment by their negligence.

7        159. The City is entitled to recover from the defendants its consequential, incidental, and

8    general damages to be proven at trial to compensate the City for the harm it has suffered and will

9    suffer because of the defendants' negligence.

10                              **EIGHTH CAUSE OF ACTION**

11                              **Ultrahazardous Activity**

12                      **(By the City Against the Operator Defendants Only)**

13       160. Plaintiffs reallege and incorporate by reference the allegations set forth above as

14   though set forth in full herein.

15       161. The operator defendants (*i.e.,* all defendants except the prior or current Property

16   owner defendants) engaged in the ultrahazardous activity of metal plating.

17       162. This activity presents a high degree of risk of harm to property, people, and the

18   environment from the activity causing the environment to become contaminated with metals.

19       163. The likelihood that this harm will result is great.

20       164. The risk of such harm cannot be eliminated by the exercise of reasonable care.

21       165. This activity is not a matter of common usage.

22       166. The Property, the City's property within the Site, and other property within the Site

23   were harmed by contamination as described herein, and this harm is the kind of harm that would

24   be anticipated as a result of the risk created by the ultrahazardous activity described above.

25       167. The operator defendants' conduct in engaging in this ultrahazardous activity was the

26   direct and proximate cause and a substantial factor in causing such harm.

27       168. The operator defendants are strictly, jointly and severally liable for such harm.

28       169. The City is entitled to recover from the operator defendants its consequential,



incidental, and general damages to be proven at trial to compensate the City for the harm it has suffered and will suffer because of the operator defendants' ultrahazardous activity, including damage to its property, lost tax revenues, lost profits, a costly delay in its redevelopment of the Site, and the incurrence of response costs and other damages.

### NINTH CAUSE OF ACTION

### Statutory Indemnity

### (By the City Against All Defendants)

170.   Plaintiffs reallege and incorporate by reference the allegations set forth above as though set forth in full herein.

171.   The Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), Health & Safety Code § 25300 *et seq.,* was enacted to encourage the expedient cleanup of "hazardous substances" in the environment.   In furthering this goal, the California Legislature included the statutory right of contribution or indemnity for parties who incur costs to address contaminated properties from those parties who are responsible for the contamination.

172.   Health & Safety Code § 25363(d) provides that "[a]ny person who has incurred removal or remedial action costs in accordance with [HSAA] . . . may seek contribution or indemnity from any person who is liable pursuant to [HSAA]."

173.   A "liable person" is defined in Health & Safety Code § 25323.5(a) as "those persons described in section 107(a) of [CERCLA] (42 U.S.C. Sec. 9607(a))."

174.   "Those persons described in section 107(a)" of CERCLA include, among others, the current owner or operator of a facility, and any person who at the time of disposal of any hazardous substance owned or operated a facility at which hazardous substances were disposed of.   42 U.S.C. § 9607(a).

175.   Each defendant is a "liable person" as defined in Health & Safety Code § 25323.5(a) and 42 U.S.C § 9607(a).

176.   The City is not a "liable person" because it never owned the Property and had no involvement with the operations at the Property that caused the contamination.

177.   Each defendant is a "person" within the meaning of Health & Safety Code §§ 25319



1    and 25323(a).

2    178. There have been releases or threatened releases of hazardous substances into the

3    environment at the Site.

4    179. As a direct and proximate result of the defendants' conduct that caused and

5    contributed to the contamination at the Site, the City has incurred and will continue to incur

6    removal and/or remedial action costs in accordance with HSAA.

7    180. The City has given DTSC notice of the commencement of this action, as required by

8    Health & Safety Code § 25363(d).

9    181. As a direct and proximate result of the defendants' conduct as alleged herein, and due

10    to the strict liability imposed by HSAA, the City is entitled to full indemnity from defendants

11    under Health & Safety Code § 25363(d) for all removal costs, remedial action costs, and response

12    costs, including attorneys' fees, it has incurred or will incur in the future.

13    **TENTH CAUSE OF ACTION**

14    **Declaratory Relief**

15    **(By the City Against All Defendants)**

16    182. Plaintiffs reallege and incorporate by reference the allegations set forth above as

17    though set forth in full herein.

18    183. An actual dispute and controversy has arisen and now exists among the parties to this

19    action concerning their respective rights and duties in that the City contends, and defendants

20    deny, that defendants are responsible for the contamination at the Site, and are obligated to pay

21    for the costs of the investigation and cleanup, for the harm caused and to be caused to the City by

22    the contamination, and for the costs incurred and to be incurred by the City because of the

23    contamination.

24    184. The City has incurred and will incur costs, including but not limited to investigatory,

25    remedial, and removal expenses, as well as attorneys' fees and interest in the future as a direct

26    and proximate result of the contamination at the Site.

27    185. A judicial declaration is necessary and appropriate under the present circumstances in

28    order that the City may ascertain its rights and duties.



186.   Under state and federal law, including the Declaratory Judgment Act, 28 U.S.C. § 2201, and CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), the City is entitled to a judicial determination of the parties' rights and duties with respect to such dispute and controversy, including a declaration that defendants are liable to the City for all harm suffered and costs incurred and to be incurred by the City as a result of the contamination at the Site, and that defendants are liable for, and must timely perform, the investigation and cleanup of the contamination at the Site and must timely obtain regulatory closure of the Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor for the following:

1.    For a preliminary and permanent injunction requiring defendants to undertake at their sole cost and consistent with the national contingency plan all actions necessary to investigate and abate the nuisance conditions and endangerments to health or the environment that are or may be present at the Site and to obtain regulatory closure of the Site;

2.    For an order requiring defendants to undertake at their sole cost all actions necessary to investigate and remediate the contamination at the Site;

3.    For a declaration that defendants are liable under HSAA § 25363(d) and are liable to the City in indemnity under HSAA § 25363(d) for all past, present, and future response costs and other costs which have been or may be incurred by the City at the Site;

4.    For a declaration under CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), that defendants are liable to the City for all past, present, and future necessary costs of response consistent with the national contingency plan;

5.    For damages from defendants to compensate the City for the costs, including attorneys' fees, it has incurred and will incur in response, removal, or remedial efforts, the exact amount of which will be ascertained according to proof;

6.    For compensatory and consequential damages in excess of $1 million to be used to investigate, remediate, and obtain regulatory closure of the Site;

7.    For an award to Plaintiffs for their costs of litigation, including attorneys' fees and expert witness fees, pursuant to RCRA § 7002(e), 42 U.S.C. § 6972(e), the Gatto Act, Cal. Health

& Safety Code § 25403.5, and California Code of Civil Procedure § 1021.5;

8.    For prejudgment and post-judgment interest;

9.    For all costs of suit herein;

10.   For such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand trial by jury of any and all issues so triable.

DATED:  April 12, 2018                         PALADIN LAW GROUP® LLP

By:   *Bret Stone*

Bret A. Stone

Special Assistant City Attorneys
for the City of West Sacramento

Counsel for Plaintiffs
City of West Sacramento and
People of the State of California

