UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CITY OF WEST SACRAMENTO, CALIFORNIA; and PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiffs,<br><br>v.<br><br>R AND L BUSINESS MANAGEMENT, a California corporation, f/k/a STOCKTON PLATING, INC., d/b/a CAPITOL PLATING, INC., a/k/a CAPITOL PLATING, a/k/a CAPITAL PLATING; CAPITOL PLATING INC., a dissolved California corporation; ESTATE OF GUS MADSACK, DECEASED; ESTATE OF CHARLES A. SCHOTZ a/k/a SHOTTS, DECEASED; ESTATE of E. BIRNEY LELAND, DECEASED; ESTATE OF FRANK E. ROSEN, DECEASED; ESTATE OF UNDINE F. ROSEN, DECEASED; ESTATE of NICK E. SMITH, DECEASED; RICHARD LELAND, an individual; SHARON LELAND, an individual; ESTATE OF LINDA SCHNEIDER, DECEASED; JUDY GUESS, an individual; JEFFREY A. LYON, an individual; GRACE E. LYON, an individual; THE URBAN FARMBOX LLC, a suspended California limited liability company; and DOES 1-50, inclusive, | No. 2:18-cv-900 WBS EFB<br><br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

1

|   |              |
|---|--------------|
|   | Defendants.  |

----oo0oo----

This action arises out of soil and groundwater contamination allegedly resulting from the release of hazardous substances at a property once occupied by a metal plating facility. Presently before the court is defendants Richard Leland and Sharon Leland's Motion to Dismiss the Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

I.  Factual and Procedural History

Beginning in the 1950s until September 1985, a metal plating business operated continuously on the real property located at 319 3RD Street, West Sacramento, California (the "property"). (Compl. ¶¶ 4, 32 (Docket No. 1).) Defendants Sharon and Richard Leland ("the Lelands") are individuals, former owners, operators, officers, directors, and/or shareholders of Capitol Plating, a metal plating business that operated at the property from 1961 to at least 1985, and current owners, officers, directors, and/or shareholders of R and L Business Management. (Id. ¶ 18.) R and L Business Management is a California corporation and former owner and operator of Capitol Plating and is the successor in interest and the successor in title to Stockton Plating, Inc. which owned and operated Capitol Plating.[1] (Id. ¶ 14.)

---

[1] Plaintiffs allege that Gus Madack owned and operated

2

On May 2, 1986, the Yolo County Department of Health Services inspected the property and issued a Notice of Noncompliance regarding elevated levels of heavy metals at the site. (Id. ¶ 37.) Since the initial inspection, the site has been tested several times and these tests have confirmed the presence of elevated levels of numerous contaminants in the soil and groundwater at the site. (Id. ¶ 38.)

Plaintiffs allege that Capitol Plating is the source of the contaminants and that each defendant caused or contributed to the contamination. (Id. ¶¶ 39, 43.) Plaintiffs further allege that the contamination occurred at the property as the result of numerous spills, leaks, discharges, and disposal of hazardous substances, and during the subsequent removal of the plating equipment and chemical solutions from the property. (Id. ¶¶ 40-41.) Plaintiffs claim that the contamination caused and continues to cause harm to the public health and the environment. (Id. ¶ 44.) Defendants have allegedly known for over three decades about the contamination and have failed and refused to perform or fund an investigation and cleanup of the property. (See id. ¶¶ 46-47.)

On April 12, 2018, plaintiffs the City of West Sacramento, California ("the City") and the People of the State

---

Capitol Plating from 1950 to the mid-1950s. (Compl. ¶ 11.) Charles Schotz owned and operated the business from the mid-1950's to 1961. (Id. ¶ 12.) Capitol Plating, Inc. owned and operated the business from 1960 to at least 1985. (Id. ¶ 13.) Stockton Plating owned and operated Capitol Plating Inc. from 1961 to at least 1985. (See id. ¶ 12.) R & L Business Management is the successor-in-interest and successor-in title to Stockton Plating. (See id.)

of California (collectively "plaintiffs") filed a Complaint against defendants, including the Lelands, alleging the following: (1) violation of the Resource Conservation and Recovery Act ("RCRA") § 7002(a), 42 U.S.C. § 6972(a)(1)(B); (2) violation of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") § 107(a), 42 U.S.C. § 9607(a); (3) violation of The Gatto Act, California Health & Safety Code §§ 25403-25403.8; (4) violation of The Porter-Cologne Water Quality Control Act, Cal. Water Code § 1304(c); (5) public nuisance; (6) trespass; (7) negligence; (8) ultrahazardous activity; (9) statutory indemnity; and (10) declaratory relief. Plaintiffs seek declaratory relief and costs allegedly incurred in response to soil and ground water contamination at and around the property.

II. Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under this standard, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atl. Corp.

4

v. Twombly, 550 U.S. 544, 556 (2007).

III. Discussion

    A.    Federal Claims

        1. CERCLA

CERCLA is a "comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites," and permits "a private party [to] recover expenses associated with cleaning up contaminated sites." City of Colton v. Am. Promotional Events, Inc.-W., 614 F.3d 998, 1002 (9th Cir. 2010) (citations omitted). To establish a prima facie case under CERCLA, plaintiffs must demonstrate: (1) the site on which the hazardous substances are contained is a "facility"; (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred; (3) such "release" or "threatened release" caused the plaintiffs to incur response costs that were "necessary" and "consistent with the national contingency plan"; and (4) the defendants are within one of four classes of "potentially responsible parties" subject to the liability provisions of § 9607(a). See Coppola v. Smith, 19 F. Supp. 3d 960, 969 (E.D. Cal. 2014) (Ishii, J.) (citing City of Colton, 614 F.3d at 1002).

One of the four classes of responsible parties is "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). CERCLA further defines "person" to include "an individual." See Schwarm v. Craighead, 552 F. Supp. 2d 1056, 1072 (E.D. Cal. 2008) (Shubb, J.) (citing 42 U.S.C. § 9601(20)(A), (21)). "Because 'Congress

could have limited the statutory definition of 'person' [to exclude corporate shareholders and officers,] but chose not to,' every circuit court that has addressed the issue has held that CERCLA imposes personal liability on shareholders, officers, and directors without requiring a plaintiff to pierce the corporate veil." Id. (citations omitted).

Here, the parties do not dispute whether plaintiff has adequacy pled the first three requirements; however, defendants argue that plaintiffs have not alleged sufficient facts to establish direct or personal "owner or operator" liability based on the Lelands own actions.

a. Owner Liability

Defendants move to dismiss plaintiffs' CERCLA claim because plaintiffs have not shown that defendants were "owners" of the facility.

CERCLA defines "owner or operator" as "any person owning or operating such facility" but excludes any "person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility." 42 U.S.C. § 9601 20(A)(ii). "The property of the corporation is its property, and not that of the stockholders, as owners." Riverside Mkt. Dev. Corp. v. Int'l Bldg. Prod., Inc., 931 F.2d 327, 330 (5th Cir. 1991) (quoting 1 C. Keating & G. O'Gradney, Fletcher Cyclopedia of the Law of Private Corporations § 31 at 555 (1990)).

Here, plaintiffs assert that the Lelands are liable as owners under CERCLA. Plaintiffs appear to rely on the Lelands' status as shareholders to impose liability on them as owners.

(See Compl. ¶ 18.)  However, the Lelands' "shareholder status alone is not enough to make them owners for liability purposes under CERCLA."  See Robertshaw Controls Co. v. Watts Regulator Co., 807 F. Supp. 144, 150 (D. Me. 1992); see also Riverside, 931 931 F.2d at 330 (stating that individual defendant's position as majority shareholder of the corporate entity did not make him an owner, under CERCLA, of the asbestos manufacturing plant, because the plant was purchased by the corporate entity and not by the individual defendant).  Thus, to the extent that plaintiffs rely on the defendants' status as shareholders, the court will grant defendants' Motion to Dismiss plaintiffs' CERCLA claim based on "owner" liability.

      b. Operator Liability

   Defendants move to dismiss plaintiffs' CERCLA claim because plaintiffs have not shown that defendants were "operators" of the facility.

   Given the circular definition of "operator" in the statute, the Supreme Court clarified that "under CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility."  United States v. Bestfoods, 524 U.S. 51, 66 (1998).  In other words, an operator in the CERCLA context "must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations."  Id. at 66-67.  Furthermore, the Supreme Court has held that "a corporate parent that actively participated in, and exercised control over the operations of the facility itself may be held directly liable in

7

its own right as an operator of the facility." Id. at 55. Alternatively stated, a parent corporation or individual may be held directly liable as an operator for their own actions. See id. at 65.

In determining whether an individual is an "operator" under CERCLA, "[c]ourts have struggled with the level of control necessary to support operator liability, some settling on a narrower 'actual control' standard, see United States v. Township of Brighton, 153 F.3d 307, 313-14 (6th Cir. 1996) (requiring affirmative acts from a purported operator), while others have adopted a broader 'authority to control' standard, see Nurad Inc. v. William E. Hooper & Sons Co., 966 F.2d 837, 842 (4th Cir. 1992) (requiring only the existence of authority to act)." Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc., No. 2:14-595 WBS EFB, 2014 WL 4627248, at *3 (E.D. Cal. Sept. 16, 2014) (alteration in original).

Here, plaintiffs allege that the Lelands are individuals, former owners, operators, and/or shareholders of Capitol Plating, and current owners, officers, directors, and/or shareholders of R & L Business Management. (Compl. ¶ 18.) Plaintiffs further allege that:

> [t]he remaining defendants [including the Lelands] are liable . . . because they each used, handled, stored, treated, transported, and/or disposed of, or arranged for others to do so, or exercised substantial influence and control over the use, handling, storage, transport, and/or disposal of the Contaminants at the Property, and because they each owned and/or operated the metal plating business . . . at a time when the Contaminants were disposed of at the Property.

(Id. ¶ 74.) Thus, plaintiffs allege that each defendant is liable under CERCLA. (Id. ¶ 75.)

8

However, plaintiffs allege no specific facts to demonstrate that the Lelands' "direct[ed] the workings of, manage[d], or conduct[ed] the affairs of a facility," to establish that the Lelands were "operators" of the facility under CERCLA. Furthermore, plaintiffs' conclusory allegation that each defendant is liable as operators under CERLA is not entitled to a presumption of truth. See Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc., 805 F. Supp. 2d 888, 897 (N.D. Cal. 2011) (allegation that Chevron was responsible for the releases as a former owner/operator of the facility at the time of the releases pursuant to 42 U.S.C. § 9607(a)(2) was a legal conclusion that was not entitled to a presumption of truth). Thus, regardless of which standard of operator liability applies, plaintiffs have not alleged sufficient facts to hold the Lelands directly liable as operators under CERCLA.

Accordingly, the court will grant defendants' Motion to Dismiss plaintiffs' CERCLA claim based on a theory of direct "owner or operator" liability.

2. RCRA

Defendants also move to dismiss plaintiffs' RCRA claim. "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." Meghrig v. KFC W., Inc., 516 U.S. 479, 483, (1996). Section 6972(a)(1)(B) of the RCRA permits a private party to sue certain responsible persons, including past or present owners or operators, "who ha[ve] contributed or who [are] contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an

imminent and substantial endangerment to health or the environment." See id. (quoting 42 U.S.C. § 6972(a)(1)(B)). The "RCRA does not itself define what acts of contribution are sufficient to trigger liability." Hinds Invs., L.P. v. Angioli, 654 F.3d 846, 850 (9th Cir. 2011). However, the Ninth Circuit has held "that to state a claim predicated on RCRA liability for 'contributing to' the disposal of hazardous waste, a plaintiff must allege that the defendant had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process." Id. at 852.

Here, plaintiffs allege that defendants are liable under RCRA, 42 U.S.C. § 6972 (a)(1)(B), because:

> each defendant caused or contributed to the past or present handling, treatment, transportation, or disposal of the Contaminants . . . and because each defendant either released or otherwise discarded, or caused or contributed to the release or discarding of, the Contaminants in the environment. . . or owned and controlled the Property when, and at which, those Contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

(Compl. ¶ 61). Plaintiffs further allege that the contaminants at the site "present or may present imminent and substantial endangerment to human health or the environment." (Id. ¶ 57.)

Plaintiffs' allegations are conclusory recitations of the elements "devoid of further factual enhancement" and do not sufficiently allege an RCRA claim. See Ingalls v. AMG Demolition & Envtl. Servs., No. 17-cv-2013 AJB MDD, 2018 WL 2086155, at *3 (S.D. Cal. May 4, 2018) (dismissing plaintiffs' RCRA claim where plaintiff simply pleads: (1) that all of the defendants contributed to the generation, handling, storage, treatment, transportation and disposal of solid waste; (2) that defendants

10

are past and present generators and transporters; (3) that they contributed to the disposal; and (4) that the past and ongoing generation and disposal of the solid waste by defendants may present an imminent and substantial endangerment to the environment). Again, to survive a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Because plaintiffs' Complaint lacks sufficient facts to hold defendants liable under RCRA, the court will grant defendants' Motion to Dismiss plaintiffs' RCRA claim.

B. <u>Indirect Liability: Piercing the Corporate Veil</u>

Defendants assert that plaintiffs' Complaint contains only a conclusory recitation of the elements required in order to pierce the corporate veil, and thus claims that rely on this theory should be dismissed.

It is a general principle of corporate law that a parent corporation is not liable for the acts of its subsidiaries. See Bestfoods, 524 U.S. at 61. However, "the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, inter alia, the corporate form would otherwise be misused to accomplish certain wrongful purposes . . . ."[2] See id. at 62.

To pierce the corporate veil, a plaintiff must show: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no

---

[2] Under CERCLA, "when (but only when) the corporate veil may be pierced, may a parent corporation be charged with derivative CERCLA liability for its subsidiary's actions." See id. at 63-64.

11

longer exist, and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 837 (1st Dist. 1962). A court may consider a number of different factors to show "unity of interest," including the "commingling of funds and other assets . . . the holding out by one entity that it is liable for the debts of the other, identical equitable ownership . . . use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." Roman Catholic Archbishop v. Superior Court, 15 Cal. App. 3d 405, 411 (1st Dist. 1971) (citing Associated Vendors, 210 Cal. App. 2d at 838–39). "This list is non-exclusive, and California courts have relied on a host of other factors in finding alter ego liability as well." Gerritsen v. Warner Bros. Entm't Inc., 116 F. Supp. 3d 1104, 1137 (C.D. Cal. 2015).

Here, plaintiff alleges that:

> each operator defendant . . . was the alter ego of the corporate entity . . . because, inter alia, of their controlling interests in the corporation, their complete dominance and control over the corporation that no separateness or individuality between them and the corporation existed and their failure to follow and adhere to the formalities required for the corporation's existence. Therefore, failure to "pierce the corporate veil" and hold these individual defendants liable . . . would result in injustice and prejudice to the Plaintiffs.

(Compl. ¶ 35.) Again, plaintiffs' allegations are no more than a recitation of the elements, and "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements." See Gerritsen, 116 F. Supp. 3d at 1136.

12

Here, plaintiffs do not allege any specific facts supporting their allegation that there was no separateness between the Lelands and the Corporation. Accordingly, the court will grant defendants' Motion to Dismiss plaintiffs' claims that are premised on the application of the corporate veil piercing doctrine.

### C. State Causes of Action

#### 1. The Gatto Act

Plaintiffs allege that defendants violated The Gatto Act, California Health & Safety Code §§ 25403-25403.8. The Gatto Act is "the policy successor to the now-repealed Polanco Redevelopment Act . . . and [is] interpreted and implemented consistent with that act." Cal. Health & Safety Code § 25403.8. The Gatto Act permits a local agency to "take any action that the local agency determines is necessary and that is consistent with other state and federal laws to investigate or clean up a release on, under, or from blighted property . . . within the local agency's boundaries due to the presence of hazardous materials" following an environmental assessment. Id. § 25403.1. It further provides that "if a local agency undertakes action to investigate property or clean up . . . a release of hazardous material, the responsible party shall be liable to the local agency for the costs incurred in the action." Id. § 25403.5. A responsible party includes "those described in Section 107(a) of CERCLA," and thus includes "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." See 42 U.S.C. § 9607(a)(2); Cal. Health & Safety Code §§ 25323.5,

13

25403(s). Because the complaint must plausibly plead that defendants owned or operated the facility, for the same reasons that plaintiffs' Complaint does not state a claim for "owner or operator" liability under CERCLA, it fails to state a Gatto Act claim.

### 2. Porter-Cologne Water Quality Control Act

California implements the Clean Water Act through the Porter-Cologne [Water Quality Control] Act. San Joaquin River Exch. Contractors Water Auth. v. State Water Res. Control Bd., 183 Cal. App. 4th 1110, 1115 (3d Dist. 2010). The Porter-Cologne Act permits a contribution claim to be brought against "[a]ny person who has discharged or discharges waste . . . or who has caused or permitted, causes or permits, or threatens to cause or permit any waste to be discharged or deposited where it is, or probably will be, discharged into the waters of the state and creates, or threatens to create, a condition of pollution or nuisance." Cal. Water Code § 13304(a). "The Act derives from the common law of nuisance." Wells Fargo Bank, N.A. v. Renz, 795 F. Supp. 2d 898, 918 (N.D. Cal. 2011) (citing City of Modesto Redevelopment Agency v. Superior Court, 119 Cal. App. 4th 28, 37 (2004)). "Thus, the relevant question for purposes of liability is whether the defendant created or assisted in the creation of the nuisance." Id. (internal quotations and citation omitted).

Again, plaintiffs allege no supporting facts to establish how the Lelands "created or assisted in the creation of" the "pollution" or "nuisance." See id. Instead, plaintiffs allege that "each defendant is liable under Water Code § 13304(c)," (Compl. ¶ 102), without any underlying facts regarding

14

each defendants' actions that led to the alleged pollution or nuisance. Accordingly, the court will grant defendants' Motion to Dismiss plaintiffs' Porter-Cologne Act claim.

### 3. Public Nuisance

Plaintiffs allege that all defendants are liable for public nuisance. The California Civil Code defines a nuisance as "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Cal. Civ. Code § 3479. A public nuisance is "one which affects at the same time an entire community or neighborhood, or any considerable number of persons." Id. § 3480. A defendant may be liable for a nuisance under several theories: (1) that the defendant creates or assists in the creation of the nuisance; (2) the defendant unreasonably fails to abate a nuisance when he is in possession of land; or (3) the defendant has a right of possession of land and consents or unreasonably permits a third party to create a nuisance on the land. See Coppola, 935 F. Supp. 2d at 1018-19.

Here, plaintiffs allege: (1) that all defendants exercised influence and substantial control over the operations of the metal plating business; (2) that through such influence and control defendants caused the release of the Contaminants into the environment and failed to prevent or abate such contamination; (3) that the contamination was injurious to health, indecent, offensive to the senses, and an obstruction to the free use of the various properties within the site; and (4)

15

that the contamination interfered with the comfortable enjoyment of life and property and unlawfully obstructs the free use of the surface water and groundwater at the site. (See Compl. ¶¶ 107-108.) As previously discussed, plaintiffs' Complaint does not "adequately describe culpable conduct by [the Lelands]." See Coppola, 935 F. Supp. at 1033 (dismissing public nuisance claim where plaintiff alleges that defendant operated a site of contamination and the operation led to the spread of hazardous substances but does not allege facts to indicate the active or knowing generation of the contamination nuisance or any facts to establish that defendant acted unreasonably when it failed to discover and abate the spread of the contamination). Because plaintiffs have not alleged any facts regarding how the Lelands were involved in creating the nuisance, the court will grant defendants' Motion to Dismiss plaintiffs' public nuisance claim.

### 4. Trespass

"A trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it." Wilson v. Interlake Steel Co., 32 Cal. 3d 229, 233 (1982). "A plaintiff asserting a claim for trespass must have a possessory interest in the land at issue; mere ownership is not sufficient." Gregory Vill. Partners, L.P., 805 F. Supp. 2d at 902 (citing Dieterich Int'l Truck Sales, Inc. v. J.S. & J. Servs., Inc., 3 Cal. App. 4th 1601, 1608-10 (4th Dist. 1992)). A trespass claim may include wrongful entry or invasion by pollutants. See Martin Marietta Corp. v. Ins. Co. of N. Am., 40 Cal. App. 4th 1113, 1132 (2d Dist. 1995). Here, plaintiffs allege no facts to establish how the Lelands interfered with their right to possess their

16

property nor any facts describing how the Lelands' actions led to the contaminants entering and remaining on the property. Accordingly, the court will grant defendants' Motion to Dismiss plaintiffs' trespass claim.

### 5. Negligence

Plaintiffs allege a negligence cause of action against defendants. "Negligence is the failure to use reasonable care to prevent harm to oneself or to others." Raven H. v. Gamette, 157 Cal. App. 4th 1017, 1025 (2d Dist. 2007). "A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation." Id. To state a claim for negligence, a plaintiff must allege: "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries." Alvarez v. BAC Home Loans Servicing, L.P., 228 Cal. App. 4th 941, 944 (1st Dist. 2014).

Here, plaintiffs allege that all defendants breached various duties by, among other things, failing to exercise due care in handling the contaminants, using the equipment at the property, failing to investigate, and failing to contain the contaminants. (See Compl. ¶¶ 134-156.) However, plaintiffs have alleged no supporting facts to establish why the Lelands owed plaintiffs a duty, how the Lelands breached that duty, or how the Lelands' actions contributed to the contamination. Accordingly, the court will grant defendants' Motion to Dismiss plaintiffs' negligence claim.

### 6. Ultrahazardous Activity

Plaintiffs allege a cause of action for strict liability for ultrahazardous activity against the operator defendants only.[3]

"One who carries on an ultrahazardous activity is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultra-hazardous." Luthringer v. Moore, 31 Cal. 2d 489, 498 (1948). "An activity is ultra-hazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care and (b) is not a matter of common usage." Id.

Here, plaintiffs allege that the operator defendants engaged in the ultrahazardous activity of metal plating. (Compl. ¶ 161.) However, plaintiffs have not pled "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Based on plaintiffs' Complaint, the Lelands' role in the metal plating business, and what actions they took that led to the contamination, is unclear. Plaintiffs plead no supporting facts to establish that the Lelands were engaged in an "ultrahazardous activity." Accordingly, the court will grant defendants' Motion to Dismiss plaintiffs' ultrahazardous activity claim.

### 8. Statutory Indemnity

---

[3] It is not clear which defendants are "operator defendants only."

18

Plaintiffs seek statutory indemnity pursuant to the Carpenter-Presley-Tanner Hazardous Substance Account Act, Health & Safety Code 25300 et seq. ("HSAA").

"The HSAA is 'California's version of [CERCLA].'" Coppola, 935 F. Supp. 2d at 1011 (quoting Ameron Inter'l Corp. v. Insurance Co. of Pa., 50 Cal. 4th 1370, 1379 (2010)). The HSAA includes a private right of action, and provides, in relevant part, that "[a] person who has incurred response or corrective action costs . . . may seek . . . indemnity from any person who is liable pursuant to this chapter." See Orange Cty. Water Dist. v. Alcoa Glob. Fasteners, Inc., 12 Cal. App. 5th 252, 297 (4th Dist. 2017) (quoting Cal. Health & Safety Code § 25363). "The HSAA expressly incorporates the same liability standards, defenses, and classes of responsible persons as those set forth in CERCLA," and "is generally interpreted consistent with CERCLA." See Coppola, 935 F. Supp. 2d at 1011 (citations omitted). Accordingly, for the same reasons the court dismissed plaintiffs' CERCLA claim, the court will dismiss plaintiffs' request for statutory indemnity pursuant to the HSAA. See id. at 1012 (dismissing HSAA cause of action because court dismissed CERCLA cause of action).

### 9. Declaratory Relief

Plaintiffs seek a judicial determination of the parties' rights and duties regarding defendants' liability to the City for the harm suffered and costs incurred by the City because of the alleged contamination. (See Compl. ¶ 186.) Plaintiffs causes of action appear to be derivative of the prior causes of action against defendants. Because the court has dismissed all

other causes of action, the court will grant defendants' Motion to Dismiss plaintiffs' claim for declaratory relief. See Coppola, 935 F. Supp. 2d at 1035 (dismissing claim for declaratory relief where declaratory relief was derivative of the prior causes of action and each of the other causes of action against the defendant were dismissed).

For the forgoing reasons, defendants' Motion to Dismiss the Complaint will be granted. Plaintiffs, seemingly aware that this motion would be granted, have requested leave to amend, and defendants do not argue that granting leave to amend will be futile, will prejudice them, or will cause undue delay. The court will according grant plaintiffs' request for leave to amend the Complaint.

IT IS THEREFORE ORDERED that defendants Richard Leland and Sharon Lelands' Motion to Dismiss Plaintiffs' Complaint (Docket No. 10) be, and hereby is, GRANTED.

Plaintiffs have twenty days from the date this Order is signed to file a First Amended Complaint, if they can do so consistent with this Order.

Dated: June 27, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE