UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CITY OF WEST SACRAMENTO, CALIFORNIA; and PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiffs,<br><br>    v.<br><br>R AND L BUSINESS MANAGEMENT, a California corporation, f/k/a STOCKTON PLATING, INC., d/b/a CAPITOL PLATING, INC., a/k/a CAPITOL PLATING, a/k/a CAPITAL PLATING; CAPITOL PLATING INC., a dissolved California corporation; ESTATE OF GUS MADSACK, DECEASED; ESTATE OF CHARLES A. SCHOTZ a/k/a SHOTTS, DECEASED; ESTATE of E. BIRNEY LELAND, DECEASED; ESTATE OF FRANK E. ROSEN, DECEASED; ESTATE OF UNDINE F. ROSEN, DECEASED; ESTATE of NICK E. SMITH, DECEASED; RICHARD LELAND, an individual; JOHN CLARK, an individual; ESTATE OF LINDA SCHNEIDER, DECEASED; JUDY GUESS, an individual; JEFFREY A. LYON, an individual; GRACE E. LYON, an individual; THE URBAN FARMBOX LLC, a suspended California limited liability company; and DOES 1-50, inclusive,<br><br>    Defendants. | No. 2:18-cv-900 WBS EFB<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

1

The City of West Sacramento, California ("the City") and the People of the State of California initiated this action to address toxic levels of soil and groundwater contamination in the environment within the City. Before the court is defendant Richard Leland's Motion to Dismiss the Second Amended Complaint. (Docket No. 37.)

I. Factual and Procedural Background

This court's prior two orders dismissing complaints as against defendant Richard Leland (Docket Nos. 18 & 33) describe the parties and detail much of the procedural and factual background to this lawsuit. In its most recent order issued on September 4, 2018, the court granted defendant Richard Leland's motion to dismiss in full and gave plaintiffs twenty days to file an amended complaint. (Docket No. 33.)

On September 20, 2018, plaintiffs filed the Second Amended Complaint, which alleges the following causes of action against Leland: (1) violation of the Resource Conservation and Recovery Act ("RCRA") § 7002(a), 42 U.S.C. § 6972(a)(1)(B); (2) violation of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") § 107(a), 42 U.S.C. § 9607(a); (3) violation of The Gatto Act, California Health & Safety Code §§ 25403-25403.8; (4) statutory indemnity; and (5) declaratory relief and costs allegedly incurred in response to soil and ground water contamination at and around the property. (Second Am. Compl. ("SAC") (Docket No. 34).) Defendant Richard Leland moves to dismiss the SAC against him in full.

## II. Discussion

### A. Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that offers mere "labels and conclusions" will not survive a motion to dismiss. Id. (internal quotation marks and citations omitted).

### B. CERCLA and RCRA Claims

Plaintiffs contend that Leland qualifies an "operator" under CERCLA and RCRA[1] such that he is liable for his individual conduct in causing the alleged contamination.[2]

---

[1] Both parties agree that the legal analysis under CERCLA and RCRA for operator liability should be the same considering that the term is defined identically in the two statutes. (See Pls.' Opp'n to Mot. to Dismiss at 5 (Docket No. 40); Mot. to Dismiss Pls.' SAC at 11.)

[2] Plaintiffs also argue in their papers that Leland should be liable as an owner (Pls.' Opp'n to Mot. to Dismiss at 2, 5) and that the court should pierce the corporate veil and hold Leland individually liable for the purportedly wrongful acts of the corporate defendants (SAC ¶ 57). At oral argument, however, plaintiffs' counsel abandoned these two theories, and for good reason.

To be liable as an "owner" for CERCLA purposes, the individual must be an absolute owner of the property where

CERCLA defines "owner or operator" as "any person owning or operating such facility" but excludes any "person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility." 42 U.S.C. § 9601 20(A)(ii).

Given the circular definition of "operator" in the statute, the Supreme Court clarified that "under CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility." United States v. Bestfoods, 524 U.S. 51, 66 (1998). In other words, an operator in the CERCLA context "must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." Id. at 66-67. The Ninth Circuit has further interpreted operator liability to extend to any party with "authority to control the cause of the contamination at the time the hazardous substances were released

---

hazardous substances were disposed of. See City of Los Angeles v. San Pedro Boat Works, 635 F.3d 440, 448-51 (9th Cir. 2011). As a lessee, Leland would not be liable, because under California law, "[a] leasehold is not an ownership interest unlike the possession of land in fee simple." Auerbach v. Assessment Appeals Bd. No. 1., 39 Cal. 4th 153, 163 (2006) (citation omitted).

Similarly, plaintiffs' allegations as to piercing the corporate veil are identical to those in the original and first amended complaints, which the court determined were "no more than a recitation of the elements, and '[c]onclusory allegations of 'alter ego' status are insufficient to state a claim.'" (Docket No. 18 (quoting Gerritsen v. Warner Bros. Entm't Inc., 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015).) The court is unaware of any authority suggesting that Leland would be subject to liability on a theory of piercing the corporate veil solely because he is a shareholder of a closely held corporation.

4

into the environment." Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp., 976 F.2d 1338, 1341 (9th Cir. 1992); see also San Pedro, 635 F.3d at 452 n.9 (restating this interpretation of operator liability).

Plaintiffs rely on three separate allegations in their complaint to support a theory of operator liability.[3] First, plaintiffs allege that Leland "was responsible for approving purchase orders for chemicals and supplies, arranging for delivery of the chemicals and supplies, and creating invoices for the plating operation at the Property." (SAC ¶ 52.) Second, plaintiffs contend that Leland "was responsible for waste permitting and environmental compliance," which "included obtaining permits for the transportation of hazardous material." (SAC ¶ 46.) Third, plaintiffs argue that Leland's authority to lease the property suggests he had authority to control the source of contamination. (Pls.' Opp'n to Mot. to Dismiss at 8.)

---

[3] Leland's status as President of Stockton Plating, Inc. is insufficient by itself to establish operator liability. Plaintiffs must show that Leland was personally involved with or personally responsible for the "operations specifically related to pollution" in order to establish operator liability. See Seattle Times Co. v. LeatherCare, Inc., No. C15-1901 TSZ, 2018 WL 3873562, at *30, --- F. Supp. 3d ---- (W.D. Wash. Aug. 15, 2018) (citing Bestfoods, 524 U.S. at 66-67). The authority to control test does not compel a different result, because it considers "a defendant's actual conduct as evidence of the authority to control." Nurad, Inc. v. William E. Hooper & Sons Co., 966 F.2d 837, 842 (4th Cir. 1992); see also Kaiser Aluminum, 976 F.2d at 1341-42 (adopting the Fourth Circuit's authority to control test as stated in Nurad). To hold otherwise test would make every President, CEO, or Board of Directors responsible for operations related to pollution, a result not contemplated by Bestfoods. See Bestfoods, 524 U.S. 69-70 ("[I]t cannot be enough to establish liability here that dual officers and directors made policy decisions and supervised activities at the facility.").

5

Plaintiffs' first two allegations are based on information and belief.  While facts may be alleged on information and belief, conclusory allegations asserted on such a basis are insufficient to state a claim.  Blantz v. Cal. Dep't of Corr. & Rehab., 727 F.3d 917, 927 (9th Cir. 2013) (citing Iqbal, 556 U.S. at 686).  A complaint will not survive a motion to dismiss if it "tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678.  The SAC does not detail any of the factual predicates to support plaintiffs' conclusion that Leland was responsible for environmental compliance or that he arranged for delivery of chemicals to the property.[4]  Instead, these allegations read like conclusions because they simply plead requirements for a person to be an operator under CERCLA.  See also id. at 662 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007))).

None of Leland's statements that plaintiffs rely on support these allegations.  Those statements merely show that Leland had knowledge after-the-fact about environmental contamination at the property, not that he had control over the source of the contamination.  (See SAC ¶¶ 46, 63–64.)  Until plaintiffs provide a factual basis for these two allegations,

---

[4] Nor does the complaint suggest that the necessary facts are "peculiarly within the possession and control of the defendant."  See Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017) (citations omitted).

they cannot support a theory of operator liability that can survive a motion to dismiss.[5]  To be sufficient, any additional allegations would have to directly connect Leland to operations at the site specifically related to pollution.

Finally, Leland's mere status as a lessee of the property cannot support a theory of operator liability.  As this court previously observed, this allegation does not demonstrate that Leland participated in the disposal of hazardous wastes or that he "had the authority to control the cause of contamination at the time the hazardous substances were released into the environment."  Kaiser Aluminum, 976 F.2d at 1341.  Execution of a lease does not necessarily imply control of "operations specifically related to pollution."  See Bestfoods, 524 U.S. at 66.

Accordingly, the court will grant Leland's motion to dismiss plaintiffs' CERCLA and RCRA claims based on "operator" liability.

B.   State Law Claims

Plaintiffs' third and fourth causes of action are state law claims that, as the court's two prior orders indicated, require plaintiffs to allege facts indicating that Leland owned or operated the facility, or that he created the alleged

---

[5] Even if plaintiffs have established that Leland directed deliveries to the property, that is not enough to establish that Leland had the authority to control what was delivered to the West Sacramento facility.  The allegations in the complaint indicate that the West Sacramento facility was billed separately for all chemicals and supplies necessary for its operations, which casts doubt over the theory that the headquarters directed what happened at the facility.  (See SAC ¶ 51.)

7

contamination. Plaintiffs have failed to carry that burden, and as such all state law claims will be dismissed.

        C.    <u>Declaratory Relief</u>

Plaintiffs also request declaratory relief, contending that because they have alleged a CERCLA claim, they are entitled to declaratory relief under 42 U.S.C. § 9613(g)(2). In the absence of a valid claim for recovery under CERCLA, declaratory relief is unavailable. See <u>Coppola v. Smith</u>, 935 F. Supp. 2d 993, 1005 (E.D. Cal. 2013) (Ishii, J.) (holding the same).

IT IS THEREFORE ORDERED that Leland's Motion to Dismiss Plaintiffs' Second Amended Complaint (Docket No. 37) be, and the same hereby is, GRANTED.

Plaintiffs have twenty days from the date this Order is signed to file a Third Amended Complaint, if they can do so consistent with this Order.[6] This will be the last time plaintiffs are given leave to amend. Plaintiffs have had three opportunities to amend their complaint as to this defendant and the court has clearly stated the deficiencies in plaintiffs' complaint each time.

---

[6] The court rejects plaintiff's request to permit this case to proceed to discovery so that plaintiffs can gather more facts to properly amend their complaint. The purpose of a motion to dismiss is to determine whether plaintiffs have stated a claim "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 678-79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Until plaintiffs can survive a motion to dismiss, the court will not permit discovery as to defendant Richard Leland.

Dated: November 15, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE