UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CITY OF WEST SACRAMENTO, CALIFORNIA; and PEOPLE OF THE STATE OF CALIFORNIA, <br><br> Plaintiffs, <br><br> v. <br><br> R AND L BUSINESS MANAGEMENT, a California corporation, f/k/a STOCKTON PLATING, INC., d/b/a CAPITOL PLATING, INC., a/k/a CAPITOL PLATING, a/k/a CAPITAL PLATING; CAPITOL PLATING, INC., a dissolved California corporation, <br><br> Defendants. | No. 2:18-CV-00900 WBS EFB <br><br> <u>MEMORANDUM AND ORDER RE: MOTION TO DISMISS R&L BUSINESS MANAGEMENT'S THIRD-PARTY COMPLAINT</u> |

----oo0oo----

The City of West Sacramento, California ("the City") and the People of the State of California filed suit to address toxic levels of soil and groundwater contamination in the environment within the City. Defendants R&L Business Management and John Clark (collectively referred to as "R&L") subsequently brought the County of Yolo and Eco Green into the

1

action as a third parties to the City's lawsuit.  R&L seeks contribution after R&L was found liable in the City's lawsuit on summary judgment.  (See Docket No. 125.)  Before the court is the County of Yolo's ("the County") Motion to Dismiss Defendant R&L's First Amended Third-Party Complaint. (Docket No. 116.)

I.  Factual and Procedural Background

The City's lawsuit against R&L involves the contamination at the property located at 319 3rd Street in West Sacramento, California.  This court described much of the factual and procedural background to this lawsuit in its prior orders.  (See Docket Nos. 18, 33, 44, 63, 115, & 125).  Recently, this court granted the City's motion for partial summary judgment and found defendants liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f)(1). (Docket No. 125.)

R&L's claim against the County and Eco Green involves the alleged contamination at 305 3rd Street, previously owned by the County, and 317 3rd Street, currently owned by Eco Green. (Am. Third Party Compl. ¶¶ 10, 20, 44 (Docket No. 116).)  The court previously dismissed, and gave leave to amend, R&L's claims for (1) contribution under CERCLA, 42 U.S.C. § 9613(f)(1); (2) equitable indemnity; (3) equitable contribution; and (4) declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.  (Docket No. 115.)  R&L subsequently filed the First Amended Third-Party Complaint ("ATPC") alleging only a claim for contribution under CERCLA.  (Docket No. 116.)  The County now moves to dismiss the ATPC, and Eco Green joins in the County's motion.  (Docket Nos. 126, 130.)

II. Discussion

    A. California's Government Claims Act

Pursuant to California's Government Claims Act ("CGA"), "a party seeking to recover money damages from a public entity or its employees must present a claim to the California Victim Compensation and Government Claims Board before filing suit in court." Tran v. Young, No. 2:17-CV-1260 DB P, 2018 WL 603814, at *4 (E.D. Cal. Jan. 26, 2018) (citing Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2). "The filing of a proper claim pursuant to Gov. Code, § 910, describing the contents of such a claim, is a condition precedent to the maintenance of an action against the state for damages caused by tort." Donohue v. State, 178 Cal. App. 3d 795, 797 (2d Dist. 1986). The County argues that R&L did not sufficiently present the claim, and therefore the ATPC must be dismissed. See id.

To sufficiently present a claim, complainant must include "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," and "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of the presentation of the claim." Cal. Gov't Code § 910. The factual basis for recovery in the complaint must be "fairly reflected in the written claim." Watson v. State, 21 Cal. App. 4th 836, 838 (2d Dist. 1993) (sustaining demurrer where legal theory for recovery in written claim differed from that in the complaint); Donohue, 178 Cal. App. 3d at 797 (same).

Here, R&L has sufficiently presented its CERCLA claim. R&L specified that the claim concerns "toxic chemicals,"

including "substantial amounts of lead," and "fill materials" "discharged" "from at least 1938 until at least 1997" on the "Yolo County owned portions of [the Eastern 300 block of Third Street, West Sacramento]," which the County does not dispute includes the 305 property. (Claim for Damages at 1 (Docket No. 110-2).) The written claim also states that the discharge occurred "during the County's ownership" of the property and that "these discharged chemicals and fill materials contributed to the contamination of the soil and groundwater."[1] (Id.) The written claim thus states the date, place, and circumstances that give rise to the claim. Further, given that the ATPC alleges that fill materials, hazardous chemicals, and lead were disposed of at the 305 property and subsequently contaminated nearby properties, the soil, and groundwater, the written claim "fairly reflect[s]" these allegations. (See Watson, 21 Cal. App. 4th at 838; ATPC ¶¶ 31, 32.) Accordingly, R&L has sufficiently presented its CERCLA claim.

B. CERCLA

A party must be subject to suit under CERCLA Section 106 or 107(a) to be able to bring a contribution claim for the contamination that is the subject of the suit. Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 168 (2004). In its previous order, the court dismissed R&L's CERCLA contribution claim because R&L sought "contribution for contamination for which it is not being sued." (Mem. & Order at 6 (Docket No.

---

[1] Because "at the time of the presentation of the claim" R&L had not reimbursed the city for clean-up costs and did not know the extent of its liability, R&L did not need to include any monetary figures. See Cal. Gov't. Code § 910.

4

115).) Specifically, the court found that R&L did not plausibly allege that either the City's complaint sought to hold R&L responsible for the contamination at the 305 property or that the County's contamination was the same contamination present at the 319 property, for which the City is suing R&L. (Id. at 4-5, 5-6.)

The ATPC cures those defects. It alleges that "the site history for the County Property and 317 Third Street indicates that lead and other toxic chemicals", including "zinc, cadmium, chromium," "were discharged onto and into the soil at those locations." (ATPC ¶ 31, 32.) That contamination of the soil "continue[s] to spread." (ATPC ¶ 31.) The ATPC further alleges that "historic fill material" containing "heavy metals . . . including but not limited to zinc, cadmium, chromium, and lead" was "imported, disposed, dumped, released at and/or spread from the County Property [and] 317 Third Street." (ATPC ¶ 18.) That material was spread "potentially onto others, including 319 Third Street." (ATPC ¶ 44). Indeed, "the releases of fill material that occurred at the County Property, 317 Third Street, and 319 Third Street contain some of the same contaminants which are commingled." (ATPC ¶ 38.)

Therefore, the ATPC alleges, "R&L has incurred and will continue to incur response costs as a result of the release(s) of heavy metal contaminants . . . disposed of at the County Property and 317 Third Street." (ATPC ¶ 45.) The allegations in the ATPC, if taken as true, establish that the County has contributed to the release of the hazardous substances that emanate from the 319 Property. Because the City has sued R&L for that release of

hazardous substances, R&L no longer "seeks contribution for contamination for which it is not being sued." (See Mem. & Order at 6 (Docket No. 115)). R&L has therefore stated a claim for contribution against the County. See 42 U.S.C. § 9613(f)(1); Atl. Research, 551 U.S. at 138.

The County contends that R&L is not subject to an action for the contamination emanating from the County's property because the City in its complaint alleges only contamination "originating at 319 Third Street." (See City's Third Amended Complaint ¶ 4 (Docket No. 45).) Because the contamination allegedly moving from the 305 property to the 319 property by definition did not originate at the 319 property, the County argues that R&L is not subject to suit for the County's contamination, and thus has no Section 113(f)(1) claim for contribution.

The court disagrees with the County's overreliance on the language in the City's complaint. First, on a purely practical level, the court cannot infer that the City will clean only the contamination that "originated at 319 Third Street." This is especially true where it is alleged that the contaminants are "commingled" at the 319 property. (ATPC ¶ 38.) If the City is successful, R&L will undoubtedly have to reimburse the City for the cost of cleaning whatever hazardous contamination is currently at the 319 property, not just that which originated there.

Second, the City's complaint does not necessarily state the extent of contamination for which the city seeks recovery. A complaint need only allege enough facts to plausibly state a

claim. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Under CERCLA, plaintiffs must allege there was a release of a hazardous substance from a facility, which caused them to incur response costs. 42 U.S.C. § 9607(a). A complaint may therefore state a CERCLA claim without referencing all hazardous substances on site. Accordingly, "[t]he complaint[] cannot be fairly read as needlessly narrowing this suit to recovery for harm caused solely by . . . pollutants" originating at the 319 property. See Pakootas v. Teck Cominco Metals, Ltd., 905 F.3d 565, 590 (9th Cir. 2018).

The Ninth Circuit considered a similar argument in Pakootas, 905 F.3d at 590-91, and concluded that a plaintiff's complaint does not serve the limiting function the County seeks. In Pakootas, defendants appealed the district court's finding that the defendant was not entitled to a divisibility defense to CERCLA liability. There, the defendant argued that, as to the divisibility defense, "its burden of production extended only to addressing the harm from the specific pollutants that [defendant] is alleged to have contributed to the Site." Id. at 590. The Pakootas defendant thus contended that it could "disregard all other types of pollution found with its wastes at the Site." Id. The Ninth Circuit disagreed and found that the "environmental harm in this case is not so limited." Id. Because "Section 107(a) imposes strict liability on all [potentially responsible parties], even if those persons are in fact not responsible for any pollution at all," and because the complaint merely complied with "CERCLA's pleading requirements" -- as opposed to intentionally narrowing recovery to certain pollutants --

defendant "was required to produce evidence showing divisibility of the entire harm -- not just the harm from sources" alleged in the complaint. Id. at 590-91.

Here, as in Pakootas, the complaint identifies sources of contamination in order to comply with pleading requirements, not to limit recovery. Accordingly, the court will not read the complaint to limit the harm to just the contamination originating at the 319 property.

The County also contends, in reliance on Cooper Industries, 543 U.S. at 166, that incurring response costs is a precondition to alleging a contribution claim under § 113(f). Because R&L has not yet reimbursed the City, the County argues that defendant cannot allege a contribution claim. The court disagrees with the County's interpretation of the statute. The County is correct that contribution "is available for parties that have reimbursed those response costs to others." Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 122 (2d Cir. 2010) (citing U.S. v. Atl. Research Corp., 551 U.S. 128, 139). But whether R&L must reimburse the City prior to the court ordering the County to contribute is different from whether R&L must reimburse the City prior to bringing a third party complaint for contribution. The statute states that "[a]ny person may seek contribution" under § 113(f) "during or following" any civil action under sections 106 or 107(a). 42 U.S.C. § 113(f)(1). The Supreme Court in Cooper found that "[t]he natural meaning of this sentence is that contribution may only be sought subject to the specified conditions, namely, 'during or following' a specified civil action." 543 U.S. at 166. "Thus, § 113(f)(1) permits suit

before or after the establishment of common liability." Atl. Research Corp., 551 U.S. at 138-39 (emphasis added). To sue for contribution, R&L need only be "subject to [a Section 106 or 107(a)] action." Cooper, 543 U.S. at 168; see also Hobart Corp. v. Waste Mgmt. of Ohio, Inc., 758 F.3d 757, 762 (6th Cir. 2014) ("[A]ny party sued under §§ 106 or 107 . . . may seek contribution from other PRPs under § 113(f)(1).") (citing Cooper, 543 U.S. at 165-66). The statute does not list any other conditions and plainly allows R&L to ask for contribution before the City's suit is resolved and any reimbursement has taken place.

The County's other objections to the sufficiency of the allegations in the ATPC challenge the veracity of the allegations and are premature at the motion to dismiss stage. The court must accept R&L's well-pled allegations as true. See Iqbal, 556 U.S. at 678. Here, R&L has alleged the necessary elements of a contribution claim, "supported by factual allegations" of the contents of the WKA Report and Dr. Anne Farr's testimony. (See id. at 679; ATPC ¶¶ 14, 35, 36.) Taking the allegations as true, the court finds that there is "more than a sheer possibility that [the County] acted unlawfully." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). Those allegations suffice at this stage. Accordingly, the court will deny defendant's motion to dismiss.

IT IS THEREFORE ORDERED that the County's Motion to Dismiss (Docket No. 126) be, and the same hereby is, DENIED.

Dated: February 19, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE