UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CITY OF WEST SACRAMENTO, CALIFORNIA; and PEOPLE OF THE STATE OF CALIFORNIA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>R AND L BUSINESS MANAGEMENT, a California corporation, f/k/a STOCKTON PLATING, INC., d/b/a CAPITOL PLATING, INC., a/k/a CAPITOL PLATING, a/k/a CAPITAL PLATING; CAPITOL PLATING, INC., a dissolved California corporation; ESTATE OF GUS MADSACK, DECEASED; ESTATE OF CHARLES A. SCHOTZ a/k/a SHOTTS, DECEASED; ESTATE OF E. BIRNEY LELAND, DECEASED; ESTATE OF FRANK E. ROSEN, DECEASED; ESTATE OF UNDINE F. ROSEN, DECEASED; ESTATE OF NICK E. SMITH, DECEASED; RICHARD LELAND, an individual; SHARON LELAND, an individual; ESTATE OF LINDA SCHNEIDER, DECEASED; JUDY GUESS, an individual; JEFFREY A. LYON, an individual; GRACE E. LYON, an individual; THE URBAN FARMBOX LLC, a suspended California limited liability company; and DOES 1-50, inclusive, | No. 2:18-CV-00900 WBS EFB<br><br>MEMORANDUM AND ORDER RE: PLAINTIFF'S MOTION FOR RECONSIDERATION AND DEFENDANT'S MOTION TO STAY |

1

|   |            |
|---|------------|
| 1 | Defendants. |
| 2 |            |

----oo0oo----

Plaintiffs City of West Sacramento, California ("the City") and the People of the State of California filed suit to address toxic levels of soil and groundwater resulting from the release of hazardous substances at a property once occupied by a metal plating facility.  Before the court are defendant R and L Business Management's ("R&L") motion to stay the proceedings and the City's motion for reconsideration.  (Docket Nos. 148, 145.)

I.   Relevant Factual and Procedural Background

The City's lawsuit involves the contamination at the property located at 319 3rd Street in West Sacramento, California (the "Site").  This court described much of the factual and procedural background to this lawsuit in its prior orders. (See Docket Nos. 18, 33, 44, 63, 115, & 125).  This court granted the City's motion for partial summary judgment and found defendant R&L liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f)(1). (Order at 10 (Docket No. 125).)  The court then set a date to determine the extent of defendant's liability (the "apportionment hearing").  (Docket No. 129.)  The court also denied partial summary judgment as to plaintiff's claim under the Resource Conservation Recovery Act ("RCRA") §7002(a), 42 U.S.C. § 6972, finding that a genuine issue of material fact exists as to whether the contamination at the Site presents an imminent and substantial endangerment to health or the environment.  (Order at

2

14-15.)

On May 6, 2020, the California Department of Toxic Substances Control ("DTSC") issued a final Imminent and Substantial Endangerment Determination and Order and Remedial Action Order ("ISE Order" or "the Order") to defendant. (See Stone Decl., at ¶ 2, Exh. 1 ("ISE Order") (Docket No. 145).) The Order names R&L, among other defendants, as responsible parties pursuant to California Health and Safety Code § 25323.5. (See id. § 2.1.) The ISE Order concludes that "[t]he actual and threatened releases of hazardous substances at the Site may present an imminent and substantial endangerment to the public health or welfare or to the environment." Id. at § 3.4. In response to the Order, defendant R&L sent a letter to DTSC stating that it "will not comply with the terms of the Order" because the contamination at issue "was not caused by" R&L. (See Stone Decl. at ¶ 2, Exh. 1 (Docket No. 152).)

R&L now moves to stay the proceedings pursuant to the primary jurisdiction doctrine, arguing that that DTSC has now invoked its authority by issuing the ISE Order. (Mot. to Stay at 1 (Docket No. 148).) Plaintiffs move for reconsideration of the court's finding that there is a triable issue of material fact as to whether the hazardous waste contamination may present an imminent and substantial endangerment to human health or the environment, arguing that the DTSC's Order constitutes "newly discovered evidence." (Mot. for Reconsideration at 4 (Docket No. 145).)

II. Motion to Stay

"The primary jurisdiction doctrine allows courts to

stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." Clark v. Time Warner Cable, 523 F.3d 1110, 1114-15 (9th Cir. 2008). Primary jurisdiction is a "prudential" doctrine "under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." Id. at 1114 (9th Cir. 2008); Reid v. Johnson & Johnson, 780 F.3d 952, 966 (9th Cir. 2015). "[A]pplication of the doctrine is 'committed to the sound discretion of the court.'" Sciortino v. Pepsico, Inc., 108 F. Supp. 3d 780, 811-12 (N.D. Cal. 2015) (quoting Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 781 (9th Cir. 2002)). If primary jurisdiction does apply, the district court should "refer" the issue to the relevant agency. Clark, 523 F.3d at 1115. In that case, "the court merely stays or dismisses proceedings to allow the plaintiff to pursue administrative remedies." Id.

"No fixed formula exists for applying the doctrine of primary jurisdiction." Davel Commc'ns, Inc. v. Qwest Corp., 460 F.3d 1075, 1086 (9th Cir. 2006). Nevertheless, the Ninth Circuit considers the following four factors in applying the doctrine: "(1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." Clark,

1   523 F.3d at 1115 (quoting Syntek, 307 F.3d at 781); Davel, 460
2   F.3d at 1086-87 (quoting United States v. Gen. Dynamics Corp.,
3   828 F.2d 1356, 1363 (9th Cir. 1987)).
4           Primary jurisdiction applies only in a "limited set of
5   circumstances." Id. at 1114.  Aside from these four factors, the
6   Ninth Circuit has provided helpful guidance for courts to
7   determine when the primary jurisdiction doctrine should and
8   should not apply.  First, the Ninth Circuit has held that
9   "efficiency" is "the 'deciding factor'" in whether primary
10  jurisdiction applies.  Astiana v. Hain Celestial Grp., Inc., 783
11  F.3d 753, 760 (9th Cir. 2015); Reid, 780 F.3d at 967.  "Courts
12  must . . . consider whether invoking primary jurisdiction would
13  needlessly delay the resolution of claims."  Astiana, 783 F.3d at
14  760 (citing Reid, 780 F.3d at 967-68 (9th Cir. 2015); United
15  States v. Philip Morris USA Inc., 686 F.3d 832, 838 (D.C. Cir.
16  2012) ("The primary jurisdiction doctrine is rooted in part in
17  judicial efficiency.").)  Primary jurisdiction is "not required,"
18  for example, "when a referral to the agency would significantly
19  postpone a ruling that a court is otherwise competent to make."
20  Id. at 761 (citing Amalgamated Meat Cutters & Butcher Workmen of
21  N. Am., 381 U.S. 676, 686 (1965)).
22          Second, "[n]ot every case that implicates the expertise
23  of federal agencies warrants invocation of primary jurisdiction."
24  Id. at 760-61.  "[T]he doctrine is not designed to 'secure expert
25  advice' from agencies 'every time a court is presented with an
26  issue conceivably within the agency's ambit.'"  Brown v. MCI
27  WorldCom Network Servs., 277 F.3d 1166, 1172 (9th Cir. 2002).  It
28  is "[c]ommon sense," for example, that "even when agency

5

expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation." Id.

Instead, the primary jurisdiction doctrine is to be used "only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." Clark, 523 F.3d at 1114 (internal citations and quotations omitted) (quoting Brown, 277 F.3d at 1172).

For the following reasons, the court finds that the primary jurisdiction doctrine does not apply in this case.  At the outset, plaintiff's claims are not within the "limited set of circumstances" identified by the Ninth Circuit where application of the primary jurisdiction doctrine is proper because it neither requires resolution of an issue of first impression, nor has Congress committed issues relevant here to a regulatory agency. See Clark, 523 F.3d at 1114.  Appellate guidance exists on both CERCLA apportionment, see, e.g., Burlington N. & Santa Fe Ry. Co. v. United States, 556 U.S. 599 (2009), and RCRA's imminent-and-substantial-endangerment element, see, e.g., Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc., 575 F.3d 199, 209-215 (2d Cir. 2009); Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 399 F.3d 248, 258-265 (3d Cir. 2005).  Further, the text of the RCRA explicitly calls for federal action, 42 U.S.C. § 6901(a)(4) ("[T]he problems of waste disposal as set forth above have become a matter national in scope and in concern and


necessitate Federal action."), and broadly empowers "any person" to file suit in federal district court, id. § 6972(a); see Bennett v. Spear, 520 U.S. 154, 165 (1997) (interpreting "any person" to grant standing "to the full extent permitted under Article III"). The language in the RCRA plainly intended for federal courts -- not state agencies -- to enforce the statute. Accordingly, this action is not the kind of case that demands application of the primary jurisdiction doctrine.

Defendant argues that application of the doctrine here is necessary for uniformity in regulation because "[t]here is already a conflict between the anticipated proceedings in this litigation and what is contemplated by the ISE Order." (Mot. to Stay at 12.) Specifically, defendant points out that the court has scheduled an apportionment hearing while the ISE Order does not require such a hearing, and that the ISE Order calls for further investigation, while the court has not. (Id.) The court is unpersuaded that there is a true conflict. Defendant can request an apportionment hearing with the DTSC if it so desires. CERCLA "[does] not mandate 'joint and several' liability in every case" and defendant can make the case that "apportionment is proper." See Burlington, 556 U.S. at 613. Further, defendant concedes that the "ISE Order fully addresses the City's claim for injunctive relief." (Mot. to Stay at 12.) To the extent that the ISE Order imposes additional obligations, this court can reduce the "likelihood of conflict" by "consider[ing] carefully the agenc[y]'s previous and contemplated orders before it orders any relief itself and [can] permit[] agency comment prior to finalizing any order." Wilson v. Amoco Corp., 989 F. Supp. 1159,

1170 (D. Wyo. 1998) (citing O'Leary v. Moyer's Landfill, Inc., 523 F. Supp. 659 (E.D. Pa. 1981)).  Indeed, considering defendant's explicit reluctance to follow the ISE Order, "court ordered relief might even be characterized as welcome" by the DTSC.  See id.

Next, defendant contends that the DTSC's expertise warrants application of the primary jurisdiction doctrine here. (Mot. to Stay at 8-11.)  Establishing that the agency has expertise, however, does not suffice to apply the doctrine.  It will almost always be the case that the agency will have more experience on issues of toxic substance control.  The burden, however, is on defendant to "show[] that courts in general lack the competence to efficiently and effectively resolve the issue." Wilson, 989 F. Supp. at 1170; see also Astiana, 783 F.3d at 760 (emphasizing court competence).  "[Q]uestions posed by RCRA . . . are not so esoteric or complex as to foreclose their consideration by the judiciary," Wilson, 989 F. Supp. at 1170, and defendant has not offered arguments to the contrary.

Finally, defendant argues that application of the primary jurisdiction doctrine here is necessary for an efficient resolution of the issues.  (Mot. to Stay at 11.)  The only efficiency benefit defendant offers, however, relates to the agency's expertise, which the court already addressed above. (See id. at 11 ("The Primary Jurisdiction Doctrine also allows for the efficient resolution of technical questions of fact through an agency's specialized expertise.").)

To the contrary, referral here would be inefficient because it "would needlessly delay the resolution of claims."

8

See Astiana, 783 F.3d at 760.  This court has already found that defendant is liable under CERCLA.  (Docket No. 125.) Nonetheless, defendant insists otherwise.  (See Def.'s Reply at 3.)  Defendant's insistence that the agency should take over the matter and simultaneous refusal to follow the agency's Order suggests that defendant's push to refer this case is an attempt to delay resolution of this matter or to relitigate issues this court has already decided.  Referral here therefore would "significantly postpone a ruling" that this court has shown it is competent to make.  See Astiana, 783 F.3d at 761.  Accordingly, application of the primary jurisdiction doctrine is "not required."  See id.  Considering that efficiency is "the 'deciding factor'" in whether primary jurisdiction applies, Astiana, 783 F.3d at 760, the court will deny defendant's motion to stay.

III. Motion for Reconsideration

"The Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration."  Bryant v. Baires, No. CIV. 08-1165MJL(PCL), 2010 WL 1225119, at *1 (E.D. Cal. Mar. 29, 2010)).  "However, Local Rule 78-230(k) does provide for applications for reconsideration."  Id.  A motion for reconsideration must include, in part, "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion."  Id.

"Relief from judgment on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes 'newly discovered

evidence' within the meaning of [Federal Rule of Civil Procedure] 60(b)(2); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence [is] of 'such magnitude that production of it earlier would have been likely to change the disposition of the case.'" Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1093 (9th Cir. 2003) (quoting Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc., 833 F.2d 208, 211 (9th Cir. 1987)).

In its Order granting the City's motion for partial summary judgment, the only issue before the court on plaintiff's RCRA claim was whether the Site presented an imminent and substantial endangerment to health or the environment. (Order at 11.) The court denied partial summary judgment because the DTSC's refusal to issue a previous draft of the ISE Order "compete[d] with Dr. [Ann] Farr's conclusion that the level of contamination does pose" the requisite threat, and because the testimony of plaintiff's expert, Dr. Farr, as it stood, was alone insufficient to establish that the Site presents an imminent and substantial endangerment to health as a matter of law. (Order at 14.) Specifically, Dr. Farr concluded that the Site posed such a threat based solely on the fact that the levels of contamination exceed California regulatory thresholds. (Id. at 14-15.) Further, Dr. Farr did not provide evidence on the full extent of the contamination and could not conclude that anyone would "realistically" be exposed to the contamination. (Id. (citing Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc., 575 F.3d 199 (2d Cir. 2009).)

The ISE Order does not constitute newly discovered

evidence.  The Order is far less detailed than Dr. Farr's input.  The Order states that 1,2-DCA, chromium, copper, nickel, and lead have been found at the site (ISE Order ¶ 2.5), which the court already knew (Order at 3).  Based on the concentrations of these chemicals, like Dr. Farr, the Order immediately concludes that "the Site represents an unacceptable risk to public health and to the groundwater resource."  (Id. § 2.7.)  As to exposure, the Order states only that the "levels of metals identified . . . in surface and near surface soil . . . represent a direct contact exposure route."  (Id. § 2.6.)  Dr. Farr, however, had already identified soil contamination as a possible route of exposure.  (Order at 5.)  Therefore, neither of these factual findings represent information previously unknown to the court.

More importantly, the DTSC's Order would not have changed the court's conclusion.  Although the DTSC's recent issuance of the ISE Order resolves the court's issue with the DTSC's "refusal to conclude that the contamination may pose an imminent and substantial danger" (Order at 14), it does not resolve the issues with respect to the insufficiency of Dr. Farr's testimony.  The mere statement of concentration levels, without more, "provides an insufficient basis for a jury to find a reasonable prospect of future harm that is both 'near-term and . . . potentially serious.'"  See Simsbury-Avon, 575 F.3d at 212 (citing Maine People's All. And Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 296 (1st Cir. 2006)).  Further, the description of exposure routes is too conclusory for the court to determine that the "pathways of exposure" are "realistic."  (Id. at 213; ISE Order § 2.6 ("Routes of Exposure.

11

Elevated levels of metals identified in surface and near surface soil samples on the property represent a direct contact exposure route.").)  Dr. Farr's testimony and the ISE Order, jointly, are insufficient for the court to find that the Site presents an imminent and substantial endangerment to health or the environment as a matter of law.  The ISE Order therefore would not have changed the disposition of the case.  See Feature Realty, 331 F.3d at 1093.  For these reasons, the court will deny plaintiff's motion for reconsideration.

        IT IS THEREFORE ORDERED that defendant's motion to stay (Docket No. 148) be, and the same hereby is, DENIED.

        IT IS FURTHER ORDERED that plaintiffs' motion for reconsideration (Docket No. 145) be, and the same hereby is, DENIED.

Dated:  July 17, 2020

WILLIAM B. SHUBB  
UNITED STATES DISTRICT JUDGE