UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CITY OF WEST SACRAMENTO, CALIFORNIA; and PEOPLE OF THE STATE OF CALIFORNIA,<br><br>           Plaintiff,<br><br>     v.<br><br>R AND L BUSINESS MANAGEMENT, a California corporation, f/k/a STOCKTON PLATING, INC., d/b/a CAPITOL PLATING, INC., a/k/a CAPITOL PLATING, a/k/a CAPITAL PLATING; CAPITOL PLATING, INC., a dissolved California corporation; ESTATE OF GUS MADSACK, DECEASED; ESTATE OF CHARLES A. SCHOTZ a/k/a SHOTTS, DECEASED; ESTATE OF E. BIRNEY LELAND, DECEASED; ESTATE OF FRANK E. ROSEN, DECEASED; ESTATE OF UNDINE F. ROSEN, DECEASED; ESTATE OF NICK E. SMITH, DECEASED; RICHARD LELAND, an individual; SHARON LELAND, an individual; ESTATE OF LINDA SCHNEIDER, DECEASED; JUDY GUESS, an individual; JEFFREY A. LYON, an individual; GRACE E. LYON, an individual; THE URBAN FARMBOX LLC, a suspended California limited liability company; and DOES 1-50, inclusive, | No. 2:18-CV-00900 WBS EFB<br><br>ORDER RE: THIRD-PARTY DEFENDANT ECO GREEN'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT |

1

| | |
|---|---|
| 1 | |
| 2 |         Defendants. |

----oo0oo----

On or about June 22, 2020, plaintiff City of West Sacramento ("the City") and defendant Eco Green, LLC ("Eco Green") reached an agreement for the settlement of all claims and disputes between them in this matter.  (Decl. of Thomas G. Trost ("Trost Decl.") ¶ 3 (Docket No. 149-1).)  The settling parties now move for a determination of good faith settlement pursuant to California Code of Civil Procedure Sections 877 and 877.6. (Docket No. 149.)

The settlement agreement provides for Eco Green to pay $10,000.00 to the City.  (Mot. at 6.)  The settling parties also request that the court dismiss the City's Third Amended Complaint ("TAC", Docket No. 45) with prejudice as to Eco Green, all claims between Eco Green and the City, and defendant R and L Business Management's ("R&L") third-party complaint with prejudice as to Eco Green.  (Docket No. 149-2.)

I. Legal Standard

Courts review settlements of claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") § 107(a), 42 U.S.C. § 9607(a), and generally enter contribution and indemnity bars, if the settlement is "procedurally and substantively fair, reasonable, and consistent with CERCLA's objectives."  Arizona v. City of Tucson, 761 F.3d 1005, 1012 (9th Cir. 2014) (citation and internal quotation marks omitted).  This court has an independent obligation to scrutinize

the terms of the agreement.  Id.  The court must find that the agreement is roughly correlated with some acceptable measure of comparative fault that apportions liability among the settling parties according to a rational estimate of the harm potentially responsible parties have done.  Id.

The factors used to evaluate whether a CERCLA settlement is fair, reasonable, and adequate are similar to the factors considered in determining whether a settlement is in good faith under California law.  See Coppola v. Smith, No. 1:11-CV-1257 AWI BAM, 2017 WL 4574091, at *3 (E.D. Cal. Oct. 13, 2017).  The court therefore "will make findings regarding 'good faith'" under California law "as part [of] its determination of whether the settlement of the CERCLA claim[ ] is fair, adequate, and reasonable."  Id.

Courts review the following nonexclusive factors from Tech-Bilt, Inc. v. Woodward-Clyde & Associates, 38 Cal. 3d 488 (1985), to determine if a settlement is within a reasonable range and thus in good faith under Sections 877 & 877.6: (1) a rough approximation of the plaintiffs' total recovery and the settlor's proportionate liability; (2) the amount to be paid in settlement; (3) the allocation of settlement proceeds among the plaintiffs; (4) a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial; (5) the financial conditions and insurance policy limits of the settling defendants; and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.  See id. at 499.  Ultimately, the determination is left to the trial court's discretion.  Id. at 502.

1        A party opposing a motion for good faith settlement has
2   the burden of demonstrating the lack of good faith.  Id. at 499-
3   50; see also Cal. Civ. Proc. Code § 877.6(d).  A determination
4   that the settlement was made in good faith shall bar any other
5   joint tortfeasor from any further claims against the settling
6   tortfeasor for contribution or indemnity, based on comparative
7   negligence or comparative fault.  Id. § 877.6(c).
8   II. Application
9        This court described much of the factual and procedural
10  background to this lawsuit in its prior orders. (See Docket Nos.
11  18, 33, 44, 63, 115, & 125.)
12       Plaintiffs the City and the People of the State of
13  California filed suit against defendant R&L , among others,
14  alleging, inter alia, a violation of CERCLA § 107(a).  (See TAC.)
15  R&L filed an amended third-party complaint against Eco Green and
16  the County of Yolo ("the County"), seeking contribution under
17  CERCLA, 42 U.S.C. § 9613(f)(1).  (Docket No. 116.)
18       The first two Tech-Bilt factors require the court to
19  examine the amount to be paid in relation to the settlors'
20  approximate proportionate liability.  Eco Green settled with the
21  City for a lump sum payment of $10,000.00.  Plaintiffs contend
22  that the cost of remediation of the contamination is between
23  $700,000 and $1.2 million.  (See Torst Decl. ¶ 5.)  The settling
24  parties place responsibility on the settling defendant at around
25  1 percent.  Although R&L did not object to the court's use of
26  these cost figures in previous good-faith settlement
27  determinations (see Docket Nos. 70 & 108), R&L now contends that
28  the remediation will cost up to $2.2 million (Opp'n at 3).

1          Considering the evidence available, the court finds
2 that the settlement amount is appropriate under either
3 remediation cost estimate.  The evidence suggests that Eco Green
4 only minimally contributed to the contamination at issue.  The
5 City seeks to clean up the property located at 319 Third Street,
6 West Sacramento, California ("the Site").  Eco Green was never an
7 owner or operator of the Site.  Eco Green is the current owner of
8 317 Third Street -- the property adjacent to, and directly north
9 of, the Site.  R&L alleges that fill material originating in and
10 adjacent to the Site contributed to the contamination the City
11 wants R&L to remediate.  These allegations are based on a 2006
12 Wallace Kuhl & Associates Environmental Site Assessment ("WKA
13 Report") that found that fill material and lead were present in
14 the surrounding properties.  (Third-Party Complaint ¶ 17 (Docket
15 No. 116).)

16          The report does not conclude or even suggest that this
17 fill material caused the contamination at the 319 property and
18 does not identify substances other than lead.  (See WKA Report,
19 Ex. C (Docket No. 116).)  Plaintiffs' retained expert Dr. Anne
20 Farr instead identifies the metal plating operations conducted at
21 the Site as the source of the metals found in the adjacent
22 properties.  (Farr Report at 1.)  Dr. Farr also points out the
23 absence of "any site-specific analysis to determine whether fill
24 material at the Site does or does not contain elevated metal
25 concentrations" other than lead.  (Farr Rebuttal Report at 3.)
26 The County's retained expert Joseph Turner opined the same.
27 (Turner Report at 9.)  Notably, Dr. Farr also reported that the
28 presence of lead on the Site "is not a driver for Site

1 investigation, nor does it affect Site remediation." (Farr
2 rebuttal Report at 1.)  Therefore, even if defendant can
3 establish that fill material from Eco Green's property migrated
4 to the Site, Eco Green's contribution to the remediation cost
5 appears de minimis.

6 Under the $700,000 to $1.2 million cost remediation
7 estimate, responsibility for 1 percent of the contamination is
8 equivalent to $7,000 to $12,000.  A $10,000 settlement amount is
9 therefore proportionate to Eco Green's liability.

10 Under R&L's $2.2 million figure, the settlement amount
11 is also within an acceptable range.  Under Tech-Bilt, defendant
12 bears the burden of showing that the settlement is "out of the
13 ballpark." Tech-Bilt, 38 Cal. 3d at 499.  The California Supreme
14 Court "emphasize[d] the broad parameters of the 'ballpark' within
15 which settlements will be deemed to be in good faith." Id. at
16 488 n.9.  When asked at the hearing what R&L would claim is a
17 fair contribution for Eco Green, R&L's counsel reluctantly made
18 an estimate and estimated Eco Green's liability at 3.74 percent
19 of the total exposure.  If the cost of remediation ranges from
20 $700,000 to $2.2 million, the proportionate share of Eco Green's
21 liability would be between $26,000 and $82,000.

22 Under these estimates, the settlement amount is within
23 the ballpark contemplated by the Tech-Bilt court.  This is an
24 early settlement, and the court does "not have a full trial court
25 record or damage judgment with which to work." See Miller v.
26 Christopher, 887 F.2d 902, 907 (9th Cir. 1989).  As such,
27 "perfect foresight" is not the applicable standard here. Id. at
28 908.  Making the kinds of findings R&L wants the court to make to

6

1   approximate such perfection is neither necessary nor desireable
2   on a good-faith settlement determination.  Such fact-intensive
3   inquiries belong in a trial.  "'Since the point of settlement is
4   to avoid a trial,' the district court in such circumstances must
5   exercise a good deal of discretion in attempting to gauge
6   exposure."  Id. at 907.  Further settlement amounts "are often
7   discounted to reflect the cost of trial to the plaintiff and the
8   uncertainties of the trial's outcome."  Id.  Given the remaining
9   uncertainties due to early settlement, the evidence available to
10  the court on Eco Green's liability, the "broad" range of
11  appropriate settlement amounts, and the appropriate discounts, a
12  $10,000 settlement is appropriate.
13          R&L objects and argues that Eco Green's calculations
14  rely on inadmissible expert testimony by Eco Green's attorney.
15  The court disagrees.  As is evident above, all discussion of Eco
16  Green's liability relies on the expert testimony of Dr. Farr and
17  Mr. Turner.  Indeed, Eco Green's attorney merely cites the
18  reports and testimony to which all parties have cited.  (See
19  Trost Decl. ¶¶ 9-13.)  And even if Mr. Trost had in fact
20  purported to provide expert testimony, the court does not rely on
21  Mr. Trost's statements to find that the settlement amount is
22  reasonable.  See supra.
23          Next, R&L argues that Eco Green has failed to provide
24  evidence regarding its proportionate share of liability.  (Opp'n
25  at 10.)  Specifically, R&L argues that Eco Green must offer an
26  expert declaration stating that the proposed settlement is within
27  a reasonable range permitted by the criterion of good faith.
28  (Id.)  This is not the standard for determining what constitutes

7

1    sufficient evidence.  Courts are merely required to make an
2    educated finding about the parties' liability.  See N. Cty.
3    Contractor's Assn. v. Touchstone Ins. Servs., 27 Cal. App. 4th
4    1085, 1088 (2d Dist. 1994).  If the evidence "support[s] a
5    critical assumption as to the nature and extent of a settling
6    defendant's liability," the evidence suffices.  Toyota Motor
7    Sales U.S.A., Inc. v. Superior Court, 220 Cal. App. 3d 864, 871
8    (2d Dist. 1990).  As discussed above, the evidence Eco Green
9    offers supports an assumption of minimal liability for the
10   contamination at the Site.  Accordingly, the settlement satisfies
11   the first two Tech-Bilt factors.
12          The third factor considers the allocation of the
13   settlement proceeds among the plaintiffs.  Here, plaintiffs are
14   the City and the People of the State of California.  The
15   settlement proceeds go only to the City.  Nevertheless, these
16   plaintiffs are closely associated.  The payments would presumably
17   go toward cleaning up the contamination at the Site.  In
18   remedying the property, the City would abate this nuisance to the
19   benefit of the People of the State of California.  Therefore,
20   this factor favors approving the settlement.  (Cf. Docket No. 113
21   (order approving good faith settlement with defendant Judy
22   Guest).)
23          The fourth factor acknowledges that settlors should pay
24   less in settlement than they would at trial.  A $10,000 payment
25   represents roughly 1 percent of the estimated $1.2 million cost
26   of cleanup.  Any judgments against Eco Green would be for joint
27   and several liability, which could hold it liable for a larger
28   portion of the judgment.  This settlement also saves the parties

litigation costs and the court's time.  Therefore, this factor favors approving the settlement.  See Coppola, 2017 WL 4574091, at *4.

The fifth factor accounts for the financial conditions and insurance policy limits of the settling defendants.  The court gives serious consideration to this factor under the circumstances in this case.  The settling defendant has no insurance assets to pay for this liability. (Trost Decl. ¶ 6). Moreover, the COVID-19 pandemic has had a devastating impact on Eco Green's ownership of the real property located at 317 Third Street in West Sacramento.  (Declaration of Sara Lebastchi ("Lebastchi Decl.") ¶ 2 (Docket No. 170-1).)  The restaurant and bar operating at 317 Third Street was forced to close in early March 2020. (Id. ¶¶ 2-3.)  Eco Green has not been receiving any rent payments from its tenant since it was ordered to close by Governor Newsom, and Eco Green has no reasonable expectation that it will receive any rents for the remainder of the year. (Id. ¶¶ 3-4.)  Considering this information, this settlement may be the only opportunity for Eco Green to contribute to Site remediation. The settlement agreement accommodates defendant's limited financial resources and concludes the litigation for the settling defendant.  Therefore, this factor favors the settlement.

Finally, the sixth factor determines whether there is any collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.  No collusion is apparent here as the parties agreed to settle the case after an arm's length negotiation and with Eco Green making the settlement offer to the City, which was accepted.  (Trost Decl. ¶ 4.)

9

R&L again objects and speculates that the City is seeking to "protect[] Eco Green's interests." (Opp'n at 14.) Specifically, R&L believes that the City "deeded the 317 parcel to Eco Green" and that "Eco Green has since developed 317, and a thriving restaurant has since opened." (Id.) "For the City to turn around and sue a developer for contamination," R&L continues, "would have poisoned what had been a successful transaction." (Id.) This settlement, R&L argues, allocates all the proceeds to "the same entity that deeded the property to Eco Green" and "does not settle any claims" since the City did not sue Eco Green. (Id.)

R&L offers no evidence to support its conspiratorial assertions on the relationship between the settling parties. Eco Green was not simply "deeded" the property from the City, but rather Eco Green purchased 317 Third Street from the City in 2015 for fair market value. (Lebastchi Decl. ¶ 5.) There is no evidence to suggest that the settlement amount is payment for any kind of favor. Further, a more reasonable explanation for why the City did not sue Eco Green exists: the City does not believe Eco Green caused the contamination at the Site. Indeed, evidence discussed above supports that inference. Finally, that the City did not sue Eco Green does not preclude a settlement agreement because California Code of Civil Procedure Sections 877 and 877.6 are applicable even in cases where a plaintiff does not directly sue a settling party. Mattco Forge, Inc. v. Arthur Young & Co., 38 Cal. App. 4th 1337, 1347-48 (2d Dist. 1995); Widson v. International Harvester Co., 153 Cal. App. 3d 45, 57 (4th Dist. 1984) (Sections 877 and 877.6 apply even "where the settling

10

1  tortfeasor is merely a cross-defendant in an action for
2  comparative or partial equitable indemnity and is not a defendant
3  in the main action itself."). Accordingly, the court has no
4  reason to conclude that the settling parties have acted in bad
5  faith.
6              In sum, the balance of the Tech-Bilt factors weigh in
7  favor of a finding of reasonableness and good faith. There is
8  nothing else that suggests that the settlement is anything other
9  than fair, reasonable, and adequate. Accordingly, the court will
10 approve of the settlement of plaintiffs' claims against settling
11 defendants and enter an indemnity and contribution bar order for
12 the settling defendants.
13             IT IS THEREFORE ORDERED that the settling parties'
14 Motion for a Good Faith Settlement Determination (Docket No. 149)
15 be, and the same hereby is, GRANTED;
16             AND IT IS FURTHER ORDERED that:
17             1. Under California Code of Civil Procedure §§ 877 and
18 877.6, and 42 U.S.C. § 9613(f), the settlement agreement reached
19 by the settling parties is in good faith and is a fair, adequate,
20 and reasonable settlement as to plaintiffs' claims against the
21 settling defendants;
22             2. No contribution or indemnity claims against Eco
23 Green arising out of plaintiffs' Third Amended Complaint or any
24 related cross-claims or counterclaims will be allowed;
25             3. The plaintiffs' Third Amended Complaint (Docket No.
26 45) is dismissed with prejudice as to Eco Green; and
27 / / /
28 / / /

            4. R&L's Amended Cross-Claim (Docket No. 116) is dismissed with prejudice as to Eco Green.

Dated: July 29, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE