1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11                         ----oo0oo----

12

13  CITY OF WEST SACRAMENTO,              No. 2:18-cv-00900 WBS EFB
    CALIFORNIA; and PEOPLE OF THE
14  STATE OF CALIFORNIA,

15              Plaintiffs,               MEMORANDUM AND ORDER RE:
                                          THIRD-PARTY DEFENDANT YOLO
16       v.                               COUNTY'S MOTION FOR SUMMARY
                                          JUDGMENT
17  R AND L BUSINESS MANAGEMENT, a
    California corporation, f/k/a
18  STOCKTON PLATING, INC., d/b/a
    CAPITOL PLATING INC., a/k/a
19  CAPITOL PLATING, a/k/a CAPITAL
    PLATING; CAPITOL PLATING, INC.,
20  a dissolved California
    corporation; et al.,
21
                Defendants.
22

23                         ----oo0oo----

24          Plaintiffs City of West Sacramento, California and the

25  People of the State of California (collectively, "the City")

26  brought this action to address toxic levels of soil and

27  groundwater resulting from the release of hazardous substances at

28
                                    1

1   a property once occupied by a metal plating facility at 319 3rd

2   Street, West Sacramento, California.  (See Third Am. Compl.

3   ("TAC") (Docket No. 45).)  The City sued a number of defendants

4   under the Comprehensive Environmental Response, Compensation, and

5   Liability Act ("CERCLA") section 107(a), 42 U.S.C. § 9607(a), as

6   well as other state and federal statutes, to recover the response

7   costs associated with cleaning up the hazardous substances.  (See

8   generally id.)

9          Two of the defendants, R and L Business Management and

10  John Clark (collectively, "R&L"), have brought a single third-

11  party claim against the County of Yolo ("Yolo County") for

12  contribution under CERCLA § 113(f)(1).  (See Am. Third-Party

13  Compl. ("Am. Third-Party Compl.") (Docket No. 116).)  Yolo County

14  has filed a motion for summary judgment on that third-party

15  claim.  (See Cty. of Yolo's Mem. P. & A. ("County's MPA") (Docket

16  No. 207-1).)

17         The parties' dispute centers around the presence and

18  source of lead contamination at 319 3rd Street.  (See id.; see

19  Defs.' Opp'n to Cty. of Yolo's Mot. Summ. J. ("Defs.' Opp'n")

20  (Docket No. 213).) Yolo County argues that no genuine issue of

21  material fact exists because R&L cannot produce evidence showing

22  that Yolo County ever disposed of any lead and, even if it could,

23  lead is not a contaminant for which the City is seeking recovery

24  under CERCLA in its underlying action against R&L.  (See County's

25  MPA; Cty. of Yolo's Reply at 5-8.)  R&L argues that evidence in

26  the record could allow a reasonable trier of fact to conclude

27  that lead that was released by Yolo County was deposited or

28  migrated onto 319 3rd Street and that this lead will cause R&L to

1    incur response costs in its underlying action with the City.

2    (See Defs.' Opp'n.)

3    I.   Factual and Procedural Background

4           The parcel that forms the basis of the City's lawsuit

5    against R&L is located at 319 3rd Street in West Sacramento,

6    California.  (See TAC ¶ 4.)  The City's TAC alleges that R&L owns

7    the property at 319 3rd Street and formerly operated the

8    electroplating business that operated there between 1973 and

9    1985.  (TAC ¶¶ 14, 18.)  The TAC alleges that contaminants

10   including nickel, copper, zinc, chromium, and volatile organic

11   compounds including 1,2 DCA that originated from the

12   electroplating business on the parcel have migrated and are

13   migrating in the soil and groundwater to areas beyond the

14   property line, creating "an ever-growing plume of contamination"

15   (the "319 Site").  (See TAC ¶¶ 14, 18, 57-58.)  The TAC seeks to

16   hold the third-party plaintiffs liable for necessary response

17   costs and cleanup of this contamination.  (See id.)

18          Yolo County has never owned 319 3rd Street or been

19   involved in operations there.  (See Decl. of J. Hartman King

20   ("Hartman King Decl."), Ex. A, B, C, (Docket No. 207-5).))  From

21   at least 1914 until 1987, Yolo County owned two parcels North of

22   319 3rd Street: 305 3rd Street, which sits at the corner of 3rd

23   Street and C Street, and a single parcel spanning two street

24   addresses on C Street, 221/225 C Street (collectively, the

25   "Former County Properties").  (Id.)  In 1987, Yolo County

26   conveyed the Former County Properties to the Redevelopment Agency

27   of the City of West Sacramento via quitclaim deed.  (Hartman King

28   Decl., Ex. B.)

                                  3

1    Yolo County constructed three buildings on the Former
2    County Properties during its period of ownership: a town hall in
3    1915, an office building in 1956, and a jail in 1957.  (See Decl.
4    of Ryan Matthews ("Matthews Decl."), Exs. A, B, C (Docket No.
5    213-3, 213-4, 213-5, 213-6).)  Contracts signed by Yolo County
6    for the construction of all three of these buildings called for
7    the use of lead paint.  (See id.)  These three buildings have all
8    been demolished, and the Former County Properties are currently
9    used by the City of West Sacramento as a public parking lot.
10   (See Hartman King Decl., Ex. C, Expert Rebuttal Report of Joseph
11   Turner at 9 ("Turner Report") (Docket No. 207-5).)

12   Another parcel, 317 3rd Street ("the Firehouse
13   Property"), lies between the Former County Properties and 319 3rd
14   Street. (See Turner Report at Ex. 2.)  The Firehouse Property
15   houses the "Washington Firehouse" building and was owned by local
16   fire districts until 1987.  (See Hartman King Decl. ¶6; Am.
17   Third-Party Compl. ¶ 12.)  The Washington Firehouse still stands
18   on the property, which is currently owned by ECO Green, LLC.
19   (Id.)

20   Over the past several decades, a number of
21   environmental consultants and the California Department of Toxic
22   Substances Control ("DTSC") have conducted investigations of the
23   319 Site and surrounding properties.  (See Matthews Decl., Ex. D,
24   Expert Report of Dr. Adam Love at 12-13 ("Love Report") (Docket
25   No. 213-8).)  One such investigation was conducted by Wallace and
26   Kuhl Associates ("WKA") in 2007.  (See Hartman King Decl., Ex. D,
27   Wallace & Kuhl Assocs. Report (2007) ("WKA Report") (Docket No.
28   207-5).)  WKA collected 75 soil samples at 25 locations at the

4

1   Former County Properties and the Firehouse Property, and found

2   that 23 of the samples exceeded regulatory criteria for lead.

3   (Id.)  WKA's report notes that a prior investigation, conducted

4   by URS Corporation in 2004, had also detected a high

5   concentration of lead in a composite sample taken "on the

6   northeast portion" of the properties.  (See id. at 14.)  WKA also

7   found ceramic shards, brick, nails, and bone material beneath the

8   asphalt paving on portions of the properties, "possibly

9   suggesting that fill material is present onsite."  (See id.)

10          Based largely on information in the WKA Report, on July

11  22, 2019, the third-party plaintiffs filed a third-party

12  complaint against Yolo County and ECO Green, LLC, for

13  contribution pursuant to 42 U.S.C. § 9613(f)(1), equitable

14  indemnify, equitable contribution, and declaratory relief.  (See

15  Third-Party Complaint ("Third-Party Compl.") (Docket No. 90).)

16  The Third-Party Complaint alleged that "lead and other toxic

17  chemicals were discharged" from 305 3rd Street and 317 3rd Street

18  "onto and into the soil" beneath those parcels.  (See id. at

19  ¶ 23.)  On October 28, 2019, the court dismissed all four of

20  R&L's claims without prejudice because R&L did not seek to hold

21  Yolo County liable for the contamination at issue in the City's

22  TAC.[1]  (See Docket No. 115.)

23  _____

24          [1]    Specifically, the court dismissed R&L's claim for
    contribution under CERCLA section 113(f)(1) because R&L's claim
    stemmed only from alleged lead contamination at 305 3rd Street,
25  whereas the City's underlying TAC sought damages for the release
    of nickel, copper, zinc, chromium, and 1,2 DCA at 319 3rd Street.
26  (See Docket No. 115.)  Because R&L did not seek to hold Yolo
    County liable for the contamination at issue in the City's TAC,
27  the court held that the third-party plaintiffs could not maintain
    their contribution claim against Yolo County.  (See id.)

28

1  The third-party plaintiffs proceeded to file an amended

2  third-party complaint seeking only contribution under CERCLA

3  section 113(f) against Yolo County and ECO Green, LLC.[2]  (See Am.

4  Third-Party Compl.)  The Amended Third-Party Complaint added

5  allegations that Yolo County owned the property "generally

6  located" at 305 3rd Street, that other toxic chemicals, including

7  zinc, cadmium, and chromium, "were discharged onto and into the

8  soil" at the County property and the Firehouse Property, and that

9  "historic fill material" containing "heavy metals . . . including

10  . . . zinc, cadmium, chromium, and lead" was imported, dumped,

11  released, and/or spread from the County property and the

12  Firehouse Property onto other properties, including 319 3rd

13  Street.  (See Am. Third-Party Compl. ¶¶ 38, 44.)  The Amended

14  Third-Party Complaint also alleges that releases of fill material

15  from the County property and the Firehouse Property contained

16  contaminants that had commingled with contaminants at 319 3rd

17  Street.  (See id.)  Subsequently, the court denied Yolo County's

18  Motion to Dismiss, holding that R&L's additional allegations had

19  remedied the issues that led the court to dismiss their third-

20  party complaint.  (See Docket No. 136.)

21  After the third-party plaintiffs filed their Amended

22

23  [2]  Shortly thereafter, ECO Green, LLC and the City reached
an agreement for the settlement of all claims and disputes

24  between them in this matter on or about June 22, 2020.  (Order re
Mot. for Determination of Good Faith Settlement at 2 (Docket No.

25  174).)  The court approved the parties' settlement, finding it to
be "procedurally and substantively fair, reasonable, and

26  consistent with CERCLA's objectives," and dismissed R&L's Amended

27  Third-Party Complaint as to ECO Green, LLC with prejudice.  (See
id.)

28

1    Third-Party Complaint, the court granted the City's Motion for

2    Summary Judgment against R&L, holding that R&L is liable for the

3    contamination at the 319 Site under CERCLA section 107(a).  (See

4    Docket No. 125.)  The court then denied R&L's request for

5    divisibility, holding that it is jointly and severally liability

6    for the CERCLA violations that have occurred at the 319 Site.

7    (See Mem. & Order re Defs.' Divisibility Defense at 28

8    ("Divisibility Order") (Docket No. 203).)

9    II.  Legal Standard

10          Summary judgment is proper "if the movant shows that

11   there is no genuine dispute as to any material fact and the

12   movant is entitled to judgment as a matter of law."  Fed. R. Civ.

13   P. 56(a).  "By its very terms, this standard provides that the

14   mere existence of some alleged factual dispute between the

15   parties will not defeat an otherwise properly supported motion

16   for summary judgment; the requirement is that there be no genuine

17   issue of material fact.  Anderson v. Liberty Lobby, Inc., 477

18   U.S. 242, 248 (1986) (emphasis in original).  A "material" fact

19   is "one that might affect the outcome of the suit under the

20   governing law," while a "genuine" issue is one where the

21   "evidence is such that a reasonable jury could return a verdict

22   for the nonmoving party."  Id.

23          The party moving for summary judgment bears the initial

24   burden of establishing the absence of a genuine issue of material

25   fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The

26   moving party can satisfy this burden by (1) presenting evidence

27   that negates an essential element of the non-moving party's case

28   or (2) demonstrating that the non-moving party cannot provide

7

evidence to support an essential element upon which it will bear the burden of proof at trial.  Id. at 322-23.  If the movant can satisfy this initial burden, the burden then shifts to the non-moving party to produce specific facts beyond the pleadings to show the existence of genuine disputes of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Any inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Id. at 587.

III.  Discussion

CERCLA Section 113(f)(1) allows a party to "seek contribution from any other person who is liable or potentially liable under Section 107(a), during or following any civil action under section 106 of this title or under section 107(a) of this title."  42 U.S.C. § 9613(f)(1).  A party may assert a contribution claim only "during or following" a civil action under CERCLA section 106 or 107(a) to which they are a party. Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 168 (2004).  If a private party has not been sued, the party cannot obtain contribution under section 113(f)(1).  Id.

Here, the third-party plaintiffs are parties to an action brought against them by the City under CERCLA section 107(a).  (See generally TAC; Def. John Clark's Answer to TAC (Docket No. 48); Def. R&L's Answer to TAC (Docket No. 49).)  They are therefore authorized under CERCLA section 113(f)(1) to seek contribution from "any other person who is liable or potentially liable under section 107(a)."  42 U.S.C. § 9613(f)(1).

To establish Yolo County's liability or potential

1   liability under CERCLA section 107(a), the third-party plaintiffs

2   must satisfy four elements: "(1) the site on which the hazardous

3   substances are contained is a 'facility' under CERCLA's

4   definition of that term; (2) a 'release' or 'threatened release'

5   of any 'hazardous substance' from the facility has occurred; (3)

6   such 'release' or 'threatened release' has caused the plaintiff

7   to incur response costs that were 'necessary' and 'consistent

8   with the national contingency plan,'; and (4) the defendant is

9   within one of four classes of persons subject to the liability

10  provisions of Section 107(a)." Carson Harbor Vill., Ltd. v.

11  Unocal Corp., 270 F.3d 863, 870–71 (9th Cir. 2001) (internal

12  citations omitted) (quoting 3550 Sevens Creek Assocs. v. Barclays

13  Bank of Cal., 915 F.2d 1355, 1358 (9th Cir. 1990)). Here, the

14  third-party plaintiffs seek to hold Yolo County liable as the

15  second "class[] of person" set out in section 107(a): "any person

16  who owned or operated a facility at the time the hazardous

17  substances were disposed of." 42 U.S.C. § 9607(a).

18       The Supreme Court has made clear that a contribution

19  action under section 113(f)(1) may only follow from an action

20  under section 107(a). See Aviall, 543 U.S. at 168. The third

21  element set out in Carson Harbor therefore requires the third-

22  party plaintiffs to show that the release or threatened release

23  of hazardous materials by Yolo County for which they seek

24  contribution must be one that will "cause[] [them] to incur

25  response costs" in the underlying section 107(a) action brought

26  against the them by the City. See id.; Carson Harbor, 270 F.3d

27  at 870–71.

28       Yolo County does not appear to dispute that the Former

1  County Properties or the buildings formerly on them fall under

2  CERCLA's broad definition of "facility."  See 42 U.S.C. § 9601(9)

3  (defining facility as "any building, structure, installation . .

4  . or any site or area where a hazardous substance has been

5  deposited, stored, disposed of, or placed . . . .").  Therefore,

6  only the second, third, and fourth Carson Harbor elements are at

7  issue.  See Carson Harbor, 270 F.3d at 870-71.

8          Yolo County first argues that the third-party

9  plaintiffs cannot carry their burden of showing that a genuine

10  issue of material fact exists under the second and fourth

11  elements set out in Carson Harbor: whether a "release" or

12  "threatened release" of any "hazardous substance" occurred from

13  the Former County Properties during Yolo County's ownership.

14  (See County's MPA at 9-11.)  Second, Yolo County argues that,

15  even assuming the existence of such releases, the third-party

16  plaintiffs cannot establish a genuine issue of material fact as

17  to the third element set out in Carson Harbor: whether those

18  releases of hazardous substances will cause the third-party

19  plaintiffs to incur response costs in the underlying section

20  107(a) action brought against them by the City.  (See County's

21  MPA at 11-14.)

22          For the reasons that follow, the court rejects Yolo

23  County's arguments and finds that R&L has met its burden of

24  establishing genuine issues of material fact as to each element

25  of CERCLA section 107(a) liability and thus for its claim for

26  contribution under CERCLA section 113(f)(1).  See Aviall, 543

27  U.S. at 168.

28          A.  Whether a Genuine Issue of Fact Exists as to the Second

10

<u>and Fourth Elements of Section 107(a) Liability</u>

To establish the second and fourth elements of section 107(a) liability, R&L must show that a "release" or "threatened release" of a "hazardous substance" occurred from the Former County Properties or buildings on those properties during the period of Yolo County's ownership.  <u>See</u> <u>Carson Harbor</u>, 270 F.3d at 870-71.  CERCLA defines the term "release" broadly, as any "spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment."  42 U.S.C. § 9601(22).

The only "hazardous substance" that R&L argues has been released onto or from the Former County Properties is lead.  (<u>See</u> Defs.' Opp'n at 4-5.)  <u>See</u> 40 C.F.R. § 302.4 (listing lead as a "hazardous substance" under CERCLA).  Record evidence reveals that lead has been detected in soil at the Former County Properties during prior investigations by environmental consultants.  (<u>See</u> Matthews Decl., Ex. D, Expert Report of Dr. Adam Love at 10-11 ("Love Report") (Docket No. 213-8).)  In 2007, WKA detected lead in concentrations that exceeded regulatory criteria in 23 soil samples taken at the Firehouse Property and the Former County Properties.  (<u>See</u> WKA Report at 14.)  WKA noted in its report that previous investigations had revealed high concentrations of lead in a composite sample taken "on the northeast portion" of the sampling area, which would be on or near 221/225 C Street, the northeastern-most Former County Property.  (<u>See</u> <u>id.</u>)

Yolo County does not dispute that prior investigations

1   have revealed the presence of lead "on the eastern edge of

2   221/225 C Street," one of the Former County Properties.  (See

3   County's Statement of Uncontroverted Facts ¶ 15 ("SUF") (Docket

4   No. 207-2).)  Rather, Yolo County argues that there is no

5   evidence in the record that shows that any of this lead was

6   released onto or from the Former County Properties during the

7   period of Yolo County's ownership.  (See County's MPA at 9.)

8   Yolo County cites the report of its rebuttal expert, Joseph

9   Turner, which concludes that the record "does not contain any

10  evidence that Yolo County placed any lead-impacted soil on any of

11  the [F]ormer County [P]roperties or that any other disposal of

12  hazardous substances occurred on these properties" while Yolo

13  County was the owner.  (See Turner Report at 10-11.)  Yolo County

14  also points to deposition testimony of the City's expert, Dr.

15  Anne Farr, R&L's expert, Dr. Adam Love, and R&L's Rule 30(b)(6)

16  witnesses, Richard Leland and John Clark, all of whom testified

17  that they were not aware of any instances in which Yolo County

18  had placed hazardous substances or fill material containing lead

19  on any of the Former County Properties.  (See Hartman King Decl.,

20  Ex. G, Farr Dep. 174:17-176:9; Ex. H, Love Dep. 237:1-17, 247:1-

21  21 (Docket No. 207-5); Decl. of Alanna C. Lungren ("Lungren

22  Decl."), Ex. A, Clark Dep. 62:4-19; Ex. B, Leland Dep. 33:12-16

23  (Docket No. 207-6).)

24        However, Yolo County's evidence merely shows that there

25  is no direct evidence in the record of specific or discreet

26  releases of hazardous substances onto or from the Former County

27  Properties during the period of Yolo County's ownership.  "CERCLA

28  liability may be inferred from the totality of the circumstances;

1    it need not be proven by direct evidence."  Tosco Co. v. Koch

2    Indus., Inc., 216 F.3d 886, 892 (10th Cir. 2000) (citing United

3    States v. Cello-Foil Prods., Inc., 100 F.3d 1227, 1231-32 (6th

4    Cir. 1996)).  Here, the third-party plaintiffs have produced

5    sufficient circumstantial evidence, discussed below, to create a

6    genuine issue of material fact as to whether releases of lead

7    occurred from the Former County Properties during Yolo County's

8    ownership.  See Anderson, 477 U.S. at 248.

9         Specifically, documentary evidence shows that lead

10   paint was used in the construction of three buildings on the

11   Former County Properties during the period of Yolo County's

12   ownership.  See Matthews Decl., Ex. A ("The exterior of said town

13   hall shall be painted with two coats of white lead mixed with

14   boiled linseed oil."); Ex. B ("Primer coat [for the office

15   building] . . . shall be mixed in the proportions of 60% pigment

16   to 40% vehicle . . . . The pigment shall be composed of 80% white

17   lead and 20% zinc oxide . . . . The finish coat . . . shall be

18   mixed in the proportions of 66% pigment and 34% vehicle . . . .

19   Pigment shall be composed of 35% titanium oxide, 45% white lead,

20   and 20% zin oxide."); Ex. C ("Interior work [for jail building]:

21   Wood and Metal: Apply one coat of lead and oil based primer

22   followed by two coats of 100% pure prepared, highest grade

23   exterior paint as manufactured by W.P Fuller, Pittsburg, National

24   Lead . . . .").)

25        Based on these records, R&L's expert, Dr. Love, states

26   that "lead-based paint from the County-owned building [sic]

27   represents the only documented source of lead to soil in the

28   vicinity to [319 3rd Street] that could have resulted in the

                                  13

observed soil concentrations above the commercial/industrial soil
screening levels for lead of 320 milligram per kilogram soil."
(See Decl. of Dr. Adam Love ¶ 7 ("Love Decl.") (Docket No. 213-
7).)  As Dr. Love explains in his declaration, environmental
impacts "are typically greater in the spatial extent near to the
source of contamination."  Id. ¶ 8.  Because the observed lead
impacts to soil from prior investigations "have greater spatial
extent on the County owned-properties [sic] compared to" 319 3rd
Street, Dr. Love concludes that the three County buildings
constructed during Yolo County's ownership represent the only
known source that could explain the levels of lead observed at
the 319 Site.  (See id. ¶¶ 7-10.)

        Based on this evidence--that Yolo County used lead-
based paint in three separate construction projects at the Former
County Properties while it owned them, and that lead-based paint
is the only documented source of lead in the vicinity of the
Former County Properties that could have resulted in the observed
concentrations of lead on or near the properties--a jury could
reasonably infer that lead was "discharged," "escaped,"
"leached," was "dumped," or was "disposed" from the Former County
Properties or the buildings on them during construction or during
the several decades that Yolo County owned the properties.  See
Carson Harbor, 270 F.3d at 870-71; Matsushita, 475 U.S. at 586-87
("on summary judgment the inferences to be drawn from the
underlying facts . . . must be viewed in the light most favorable
to the party opposing the motion").  The court therefore finds
that a genuine issue of material fact exists as to the second and
fourth elements of section 107(a) liability.  See Matsushita, 475

1  U.S. at 586-87.

2          B.    Whether a Genuine Issue of Fact Exists as to the Third
                 Element of Section 107(a) Liability
3

4          To establish the third element of section 107(a)

5  liability, R&L must show that the release of hazardous materials

6  by Yolo County for which R&L seeks contribution must be one that

7  will "cause[] [it] to incur response costs" in the underlying

8  section 107(a) action brought against R&L by the City.  See

9  Aviall, 543 U.S. at 168; Carson Harbor, 270 F.3d at 870-71.

10         Yolo County argues that, because R&L only offers

11 evidence related to releases of lead, and no other hazardous

12 substance, its claim for contribution must fail as a matter of

13 law.  (See Cty. of Yolo's Reply at 5-8.)  Yolo County contends

14 that the court dismissed R&L's original third-party complaint

15 because it concerned only lead.  (See id.)  Though the Amended

16 Third-Party Complaint survived Yolo County's Motion to Dismiss,

17 Yolo County argues it was only because the Amended Third-Party

18 Complaint added allegations that other metals contained in the

19 City's TAC were released from the Former County Properties.

20 Under Yolo County's theory, summary judgment is now appropriate

21 because the third-party plaintiffs do not offer any evidence of

22 such releases.  (See id.)

23         The inquiry under the third element of section 107(a)

24 liability in a contribution action, however, is not whether the

25 third-party plaintiffs seek contribution strictly for releases of

26 the same contaminants as the City's TAC--it is whether the third-

27 party plaintiffs seek contribution for releases that will cause

28 them to incur response costs in the City's section 107 action.

                                  15

1  See Aviall, 543 U.S. at 168.  As the court observed when it

2  denied Yolo County's Motion to Dismiss the Amended Third-Party

3  Complaint, because the Amended Third-Party Complaint alleges that

4  contaminants originating from the Former County Properties are

5  commingled at the 319 Site, "on a purely practical level, the

6  court cannot infer that the City will clean only the

7  contamination that originated at 319 Third Street."  (See Order

8  re Mot. to Dismiss Am. Third-Party Compl. (Docket No. 136).)

9        That observation applies with even more force now,

10  given that the court has subsequently found that R&L's

11  contributions to the pollution present at the 319 Site are not

12  divisible from the total harm present at the Site, including harm

13  caused by elevated levels of lead.  (See Divisibility Order at

14  18-19, 27.)  Because the third-party plaintiffs allege--and

15  provide evidence--that the Former County Properties are a source

16  of the lead currently found at the 319 Site, "if the City is

17  successful, R&L will undoubtedly have to reimburse the City for

18  the cost of cleaning whatever hazardous contamination is

19  currently at the 319 property, not just that which originated

20  there."  (See Order re Mot. to Dismiss Amended Third-Party

21  Complaint at 6.)

22        Based on the evidence the parties have presented, the

23  court finds that a genuine issue of material fact exists as to

24  whether Yolo County's releases of lead will cause the third-party

25  plaintiffs to incur response costs.  See Matsushita, 475 U.S. at

26  586-87.  In their expert reports, both Dr. Love and Dr. Farr

27  conclude that lead is present at the 319 Site at concentrations

28  that will require remediation, and that it is commingled with

1    other contaminants in the soil.  (See Love Report at 23; Hartman-

2    King Decl., Ex. E, Rebuttal Expert Report of Dr. Anne Farr at 3-4

3    ("Farr Rebuttal Report") (Docket No. 207-5).)  In his report, Dr.

4    Love further concludes that source of lead at the 319 Site is a

5    layer of historic fill material upon which the Site was

6    developed.  (See Love Report at 20.)  Similar fill material has

7    been documented in prior investigations of the Former County

8    Properties and the Firehouse Property.  (Love Report at 10-11;

9    WKA Report at 14.)

10         Dr. Love explains that historic fill, which is

11   generally imported to a site to raise topographic elevation, may

12   include construction debris.  (See Love Report at 10.)

13   Consistent with his explanation, prior investigations of the

14   Former County Properties and the Firehouse Property discovered

15   ceramic shards, brick, and nails in the shallow soil.  (See WKA

16   Report at 14.)

17         Citing records associated with Yolo County's

18   construction of the town hall, jail, and office building on the

19   Former County Properties, as well as soil samples that show lead

20   impacts with greater "spatial extent" closer to the Former County

21   Properties, Dr. Love concludes in his declaration that "lead-

22   based paint from the County-owned building [sic] represents the

23   only documented source of lead to soil in the vicinity to [319

24   3rd Street] that could have resulted in the observed soil

25   concentrations above the commercial/industrial soil screening

26   levels for lead of 320 milligram per kilogram soil."

27         Yolo County's rebuttal expert, Joseph Turner, disputes

28   this conclusion, asserting in his report that the highest

1  reported lead concentrations in soil are located at the 319 Site

2  and that the use of lead anodes in chromium plating solution by

3  the third-party plaintiffs represents the most likely source of

4  lead contamination at the 319 Site.  (See Turner Report at 6.)

5  Dr. Farr also concludes that the highest concentration of lead

6  was detected in the southern portion of the 319 Site, but she

7  acknowledges that elevated lead concentrations detected by WKA

8  represent another "primary" source area of lead at the 319 Site.

9  (See Farr Report at 3-4.)  At the summary judgment stage, it is

10  not the court's task to weigh the credibility of each party's

11  expert in order to resolve conflicting testimony or evidence.

12  See Celotex, 477 U.S. at 323-24.  Rather, the presence of

13  conflicting expert testimony as to the source of lead observed at

14  the 319 Site suggests there is a disputed issue of material fact.

15  See id.

16         Yolo County also argues that the court previously

17  rejected Dr. Love's conclusion in its order denying R&L's

18  divisibility defense.  Yolo County quotes a portion of the order

19  where the court states "Dr. Love's assumption that all lead at

20  the [319 Site] must originate with fill material is not based on

21  site-specific data."  (See County of Yolo's Reply at 8.)

22  However, Yolo County's reliance on the court's divisibility order

23  is misplaced for two reasons.  First, the conclusions in Dr.

24  Love's declaration appear to be based in part on evidence that he

25  did not consider in his expert report and that were not before

26  the court in the divisibility hearing, namely the records

27  associated with past construction at the Former County

28  Properties.  (See Love Decl. ¶¶ 3-4.)

1       Second, in the divisibility order, the court's finding

2 that Dr. Love fell short of proving that <u>all</u> lead at the 319 Site

3 must have originated from fill material was made in the context

4 of determining whether R&L's contributions to the pollution at

5 the 319 Site could be divided from the total harm done to the 319

6 Site.  (<u>See</u> Divisibility Order at 8.)  The bar to establish a

7 divisibility defense is much higher than the bar to establish a

8 triable issue of material fact.  <u>See</u> <u>Pakootas</u>, 905 F.3d at 598

9 (describing the burden of proof in a divisibility claim as

10 "'substantial' because the divisibility analysis is 'intensely

11 factual'").  The court's divisibility order therefore does not

12 prevent it from concluding that Dr. Love's conclusions are based

13 on adequate data to establish a genuine dispute of material fact

14 at the summary judgment stage.  <u>See</u> <u>Celotex</u>, 477 U.S. at 323-24.[3]

15       Because Dr. Love concludes that fill material was the

16 source of the elevated lead concentrations observed at the 319

17 Site, that similar fill material is present at the Former County

18 properties and the Firehouse Property, that the spatial extent of

19 lead impacts increase as sampling gets closer to the Former

20 County Properties, and that the lead-based paint used on the

21

22     [3]   Yolo County also cites to testimony from Dr. Love's
deposition where he testified that he was not aware of when fill

23 material was placed on the 319 Site or who did it, and that there
was no other basis for concluding that lead was released onto the

24 319 Site other than fill material.  (<u>See</u> County's Reply at 4.)
However, in that testimony, Dr. Love stated he was not aware of

25 how fill material got there because he had not been asked to look
into that at the time.  (<u>Id.</u>)  Dr. Love's declaration now states

26 that the documents associated with construction at the Former
County Properties indicate that the lead paint used on the

27 buildings is the only documented source of lead near the 319 Site
that could account for the levels observed there.  (<u>See</u> Love

28 Decl. ¶ 7.)

1   three County buildings is the only documented source of lead that

2   could have resulted in the elevated lead concentrations observed

3   at the 319 Site, a reasonable trier of fact could conclude that

4   releases of lead from the Former County Properties during or

5   after construction contaminated fill material at the Former

6   County Properties, and later migrated to or was moved to the 319

7   Site.  See Matsushita, 475 U.S. at 586-87 ("on summary judgment

8   the inferences to be drawn from the underlying facts . . . must

9   be viewed in the light most favorable to the party opposing the

10  motion").  Additionally, because at least one of the three County

11  buildings was built before the 319 Site was developed for use as

12  an electroplating facility in 1949, a reasonable trier of fact

13  could conclude that the fill material containing lead was

14  deposited at the 319 Site during Yolo County's ownership.  See

15  id.

16      Accordingly, a genuine issue of material fact exists as

17  to whether Yolo County's releases of lead will cause the third-

18  party plaintiffs to incur response costs under CERCLA section

19  107(a).  See Celotex, 477 U.S. at 323-24.  Because Yolo County

20  has failed to meet its burden of proving no genuine dispute of

21  material fact exists as to any of the elements of CERCLA section

22  107(a) liability, summary judgment is not warranted.  See id.;

23  Aviall, 543 U.S. at 168.

24      IT IS THEREFORE ORDERED that Yolo County's Motion for

25  Summary Judgment (Docket No. 207) be, and the same hereby is,

26  DENIED.

27  Dated:  November 17, 2020

28

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

20