UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CITY OF WEST SACRAMENTO, CALIFORNIA; and PEOPLE OF THE STATE OF CALIFORNIA, | No. 2:18-CV-00900 WBS EFB |
| Plaintiff, | ORDER RE: PLAINTIFFS AND DEFENDANT THE URBAN FARMBOX, LLC'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT |
| v. | |
| R AND L BUSINESS MANAGEMENT, a California corporation, f/k/a STOCKTON PLATING, INC., d/b/a CAPITOL PLATING INC., a/k/a CAPITOL PLATING, a/k/a CAPITAL PLATING; CAPITOL PLATING, INC., a dissolved California corporation; JOHN CLARK, an individual; ESTATE OF NICK E. SMITH, DECEASED; THE URBAN FARMBOX LLC, a suspended California limited liability company; et al.; | |
| Defendants. | |

----oo0oo----

Plaintiffs City of West Sacramento ("the City") and the People of the State of California brought this action against defendants R and L Business Management ("R&L"), the Estate of

1

1  Nick E. Smith, John Clark, and The Urban Farmbox, LLC ("Urban

2  Farmbox"), among others, alleging, inter alia, a violation of the

3  Comprehensive Environmental Response, Compensation and Liability

4  Act ("CERCLA") § 107(a), 42 U.S.C. § 9607(a).  (See.)  The

5  operative complaint, plaintiffs' Third Amended Complaint ("TAC"),

6  seeks to hold former owners and operators of the property located

7  at 319 3rd St., West Sacramento, California ("the 319 Property")

8  responsible for the alleged soil and groundwater contamination at

9  and emanating from the property ("the Site").  (See generally

10  Third Am. Compl. ("TAC") (Docket No. 45).)  Plaintiffs and Urban

11  Farmbox now move, unopposed, for a good faith settlement

12  determination.  (See Docket No. 259.)

13  I.   Background

14         This court described much of the factual and procedural

15  background to this lawsuit in its prior orders. (See Docket Nos.

16  18, 33, 44, 63, 115, 125, and 203.)

17         The TAC alleges that Urban Farmbox is liable under

18  CERCLA § 107(a) because it is the current owner of the 319

19  Property.  (See id. at ¶ 95.)  Urban Farmbox never answered

20  plaintiffs' TAC and has been in default since March 6, 2019.

21  (See Docket Nos. 59-61.)  Urban Farmbox still has not moved to

22  set aside the default.

23         On February 8, 2021, plaintiffs and Urban Farmbox filed

24  a Notice of Settlement, indicating that they had settled all

25  claims brought by plaintiffs against Urban Farmbox in this

26  action.  (See Docket No. 259.)  Pursuant to the Settlement

27  Agreement, the parties will engage in a series of transactions,

28  including a property exchange, that will result in a net

2

settlement contribution by Urban Farmbox to the City of
$76,904.11.  (Declaration of Bret Stone ("Stone Decl."), Ex. 1
("Settlement Agreement") ¶ 3.1 (Docket No. 259-2).)

In addition to the 319 Property, Urban Farmbox owns the
adjoining parcel ("UF Parcel 002") and another parcel located in
West Sacramento ("UF Parcel 009").  (Id. at ¶ 1.2.)  The
Agreement grants the City the right and option to purchase from
Urban Farmbox the 319 Property and UF Parcel 002 ("the UF
Transfer Properties").  (Id. at 3.1.1.)  The Agreement states
that the combined market value of the UF Transfer Properties is
$420,756.00.  (See id.)

In return, the City will transfer to Urban Farmbox a
parcel of land located at 424 C St. ("the City Transfer
Property"), currently valued at $35,000.00, and pay $40,000 to
Urban Farmbox for water and sewer connection costs.  (Id. at
¶ 2.4, 3.1.2, 3.1.3.)  The City will also waive much of the
amount due to it under a promissory note originally made by Urban
Farmbox in favor of Jeffrey A. Lyon and Grace E. Lyon in 2015
("the Note"), which the City purchased and took assignment of on
June 14, 2019.  (Id. at ¶ 2.7, 3.1.4.)  The Agreement will reduce
the Note's outstanding principal balance of $293,851.89 and all
other amounts accrued or due in connection with the Note to only
$25,000.  (See id.)  The Agreement will further release Urban
Farmbox's property from the encumbrance of the Deed of Trust
which secures the Note, and amend the Note to provide that the
outstanding balance shall not bear any further interest and shall
not require any payments whatsoever unless Urban Farmbox
transfers or conveys UF Parcel 009 to a third party.  (See id.)

3

1    The Agreement contains mutual releases among all the

2    settling parties for any claims arising out of or in any way

3    connected to (1) the claims that could have been brought by the

4    settling parties in this matter, and (2) the Site or the alleged

5    contamination at the Site.  (See id. at ¶¶ 6-7.)  Urban Farmbox

6    also agrees that it will participate in this litigation,

7    including by appearing for deposition or at trial, upon the

8    City's request.  (See id. at ¶ 5.)

9    The settling parties request that the court bar all

10   claims against Urban Farmbox for contribution and indemnity, and

11   dismiss with prejudice all claims asserted against Urban Farmbox

12   in this action.  (See Mot. for Good Faith Settlement at 11

13   (Docket No. 259).)

14   II.  Discussion

15        A.   Legal Standard

16             Courts review settlements of CERCLA claims, and

17   generally enter contribution and indemnity bars, if the

18   settlement is "procedurally and substantively fair, reasonable,

19   and consistent with CERCLA's objectives."  Arizona v. City of

20   Tucson, 761 F.3d 1005, 1012 (9th Cir. 2014) (citation and

21   internal quotation marks omitted).  This court has an independent

22   obligation to scrutinize the terms of the agreement.  Id.  The

23   court must find that the agreement is roughly correlated with

24   some acceptable measure of comparative fault that apportions

25   liability among the settling parties according to a rational

26   estimate of the harm potentially responsible parties have done.

27   Id.

28             The factors used to evaluate whether a CERCLA

settlement is fair, reasonable, and adequate are similar to the
factors considered in determining whether a settlement is in good
faith under California law.  See Coppola v. Smith, No. 1:11-CV-
1257 AWI BAM, 2017 WL 4574091, at *3 (E.D. Cal. Oct. 13, 2017).
The court therefore "will make findings regarding 'good faith'"
under California law "as part [of] its determination of whether
the settlement of the CERCLA claim[ ] is fair, adequate, and
reasonable."  Id.

California Code of Civil Procedure Sections 877 and
877.6 govern the determination of whether a proposed settlement
is in "good faith" under state law.  Courts review the following
nonexclusive factors from Tech-Bilt, Inc. v. Woodward-Clyde &
Associates, 38 Cal. 3d 488 (1985), to determine if a settlement
is within a reasonable range and thus in good faith: (1) a rough
approximation of the plaintiffs' total recovery and the settlor's
proportionate liability; (2) the amount to be paid in settlement;
(3) the allocation of settlement proceeds among the plaintiffs;
(4) a recognition that a settlor should pay less in settlement
than he would if he were found liable after a trial; (5) the
financial conditions and insurance policy limits of the settling
defendants; and (6) the existence of collusion, fraud, or
tortious conduct aimed to injure the interests of non-settling
defendants.  See id. at 499.  Ultimately, the determination is
left to the trial court's discretion.  Id. at 502.

"The California Court of Appeal has held that it is
incumbent upon the court deciding the motion for good faith
settlement to consider and weigh the Tech-Bilt factors only when
the good faith nature of a settlement is disputed."  Michell v.

1  United States, No. 09-cv-0387 BTM(JMA), 2011 U.S. Dist. LEXIS
2  99942, at *8 (S.D. Cal. Sep. 6, 2011).  "[W]hen no one objects,
3  the barebones motion which sets forth the ground of good faith,
4  accompanied by a declaration which sets forth a brief background
5  of the case is sufficient."  (Id.)  A determination that the
6  settlement was made in good faith shall bar any other joint
7  tortfeasor from any further claims against the settling
8  tortfeasor for contribution or indemnity, based on comparative
9  negligence or comparative fault.  Cal. Code Civ. P. § 877.6(c).
10      B.   Application
11           The first two Tech-Bilt factors require the court to
12  examine the amount to be paid in relation to the settlors'
13  approximate proportionate liability.  The Settlement Agreement
14  will result in a net settlement contribution to the City of
15  $76,904.11.  Plaintiffs point out that, according to the estimate
16  of R&L's expert witness, the cost of remediation of the
17  contamination will be at least $2.2 million.  (See Stone Decl. ¶
18  8.)  Based on this figure, the settling parties place
19  responsibility on the settling defendant at around 3-4 percent.
20           Considering the evidence available, the court finds
21  that the settlement amount is appropriate.  Urban Farmbox has
22  only owned the 319 Property since 2015.  (See Stone Decl. ¶ 3.)
23  No party contends that Urban Farmbox actively contributed to any
24  of the contamination at issue at the Site.  While plaintiffs have
25  previously argued that the total cost of remediating the Site
26  will exceed the $2.2 million estimate put forward by R&L's expert
27  (see Docket Nos. 200-202), even if the cost of remediating the
28  Site ends up being greater than $2.2 million, none of the

1    additional cost will come as a result of contamination that the

2    settling defendant contributed to the Site.  A settlement amount

3    of up to 3-4% therefore seems within the ballpark contemplated by

4    the Tech-Bilt court, especially given that no party has objected

5    to the amount of the parties' Settlement Agreement or opposed

6    their motion.  See Tech-Bilt, 38 Cal. 3d at 488.

7            The court further notes that the Settlement Agreement

8    will provide the City with a net benefit that is more than seven

9    times greater than the $10,000 the City received in its

10   settlement with third-party defendant Eco Green LLC ("Eco

11   Green"), which the court approved as fair and reasonable under

12   Tech-Bilt on July 29, 2020.  (See Docket No. 174.)  According to

13   allegations in defendant R&L's Amended Third-Party Complaint

14   (Docket No. 116), fill material containing lead migrated from Eco

15   Green's parcel, which sits adjacent to the 319 Property to the

16   North, onto the 319 Property.  (See id.)  The court found that

17   $10,000 represented a fair approximation of Eco Green's

18   proportionate liability based on these allegations, noting that

19   the evidence suggested that Eco Green had "only minimally

20   contributed to the contamination at issue."  (See id. at 5.)

21   Considering that Urban Farmbox's contribution to the

22   contamination at issue appears to be even smaller than Eco

23   Green's, the court finds that a settlement conveying a net

24   benefit to the City of $76,904.1 satisfies the first two Tech-

25   Bilt factors.

26           The third Tech-Bilt factor considers the allocation of

27   the settlement proceeds among the plaintiffs.  Here, plaintiffs

28   are the City and the People of the State of California.  The

1   settlement proceeds go only to the City.  Nevertheless, these

2   plaintiffs are closely associated.  The status of the People of

3   the State of California as a proper party plaintiff to this

4   action has always been dubious in the first place.  Further, the

5   payments will presumably go toward cleaning up the contamination

6   at the Site, and in remedying the Site, the City will abate the

7   nuisance to the benefit of the People of the State of California.

8   Therefore, this factor favors approving the settlement.  Cf. City

9   of W. Sacramento, Cal. v. R & L Bus. Mgmt., No. 2:18-CV-00900 WBS

10  EFB, 2019 WL 5390558, at *3 (E.D. Cal. Oct. 22, 2019).

11          The fourth factor acknowledges that settlors should pay

12  less in settlement than they would at trial.  A net contribution

13  of $76,904.11 represents roughly 3-4% of the estimated $2.2

14  million cost of cleanup.  Any judgments against Urban Farmbox

15  would be for joint and several liability, which could hold it

16  liable for a larger portion--or even all--of the judgment.  This

17  settlement also saves the parties litigation costs and the

18  court's time.  Therefore, this factor favors approving the

19  settlement.  See Coppola, 2017 WL 4574091, at *4.

20          The fifth factor accounts for the financial conditions

21  and insurance policy limits of the settling defendants.  The

22  court heavily considers this factor in this case.  The settling

23  defendant has no insurance assets to pay for this liability,

24  (Stone Decl. ¶ 6.), and, according to the allegations in the TAC,

25  is a suspended California LLC (TAC ¶ 23).  Considering this

26  information, this settlement may be the only opportunity to get

27  Urban Farmbox to contribute to Site remediation.  The Settlement

28  Agreement accommodates defendant's limited financial resources

1   and concludes the litigation for the settling defendant.

2   Therefore, this factor favors the settlement.

3          Finally, the sixth factor determines whether there is

4   any collusion, fraud, or tortious conduct aimed to injure the

5   interests of non-settling defendants.  Counsel for plaintiffs

6   represents that the parties have conducted settlement

7   negotiations to resolve their liabilities to one another since

8   litigation began in 2018.  (Stone Decl. ¶ 5.)  The parties agreed

9   to settle the case after an arm's length negotiation, with

10  multiple versions of the settlement document exchanged between

11  the parties.  (Id. at ¶ 6.)  The court also notes that no party

12  has objected to the settlement, opposed the parties' motion, or

13  alleged that the Agreement was reached in bad faith or as a

14  result of collusion.  Accordingly, the court has no reason to

15  conclude that the settling parties have acted in bad faith.

16         In sum, the balance of the Tech-Bilt factors weigh in

17  favor of a finding of reasonableness and good faith.  There is

18  nothing else that suggests that the settlement is anything other

19  than fair, reasonable, and adequate.  The court will therefore

20  approve of the settlement of plaintiffs' claims against settling

21  defendants and enter an indemnity and contribution bar order for

22  the settling defendants.

23         IT IS THEREFORE ORDERED that the settling parties'

24  Motion for a Good Faith Settlement Determination (Docket No. 259)

25  be, and the same hereby is, GRANTED. The court ORDERS as follows:

26         1. Under California Code of Civil Procedure §§ 877 and

27  877.6, and 42 U.S.C. § 9613(f), the settlement agreement reached

28  by the settling parties is in good faith and is a fair, adequate,

9

1   and reasonable settlement as to plaintiffs' claims against the

2   settling defendants;

3          2. No contribution or indemnity claims against Urban

4   Farmbox arising out of plaintiffs' Third Amended Complaint or any

5   related cross-claims or counterclaims will be allowed;

6          3. The plaintiffs' Third Amended Complaint (Docket No.

7   45) is dismissed with prejudice as against Urban Farmbox.

8   Dated:  March 2, 2021

9                                        WILLIAM B. SHUBB
                                         UNITED STATES DISTRICT JUDGE

10                                       10